STATE OF NORTH CAROLINA v. RODNEY LEVON WILLIAMS, Defendant

No. COA08-1578

(Filed 8 December 2009)

**1. Robbery— use of force—sufficiency of evidence**

The evidence of defendant's use of force in a robbery prosecution was sufficient for the trial court to deny defendant's motion to dismiss where defendant contended that the use of force was a reaction to his failure to perform sexually.

**2. Assault— inflicting serious bodily injury—sufficiency of evidence**

The evidence of serious bodily injury was sufficient for the trial court to deny defendant's motion to dismiss the charge of assault inflicting serious bodily injury.

**3. Indictment and Information— variance with evidence—method of strangulation**

The trial court correctly denied defendant's motion to dismiss a charge of assault by strangulation where defendant contended that there was a fatal variance between the indictment and the testimony in the method of strangulation. There was testimony that indicated no variance; even so, the method of strangulation was surplusage.

**4. Assault— by strangulation—sufficiency of evidence—difficulty breathing not required**

Assault by strangulation does not require proof that the victim had difficulty breathing, and the evidence was sufficient where the victim stated that she felt that defendant was trying to crush her throat, that he put his weight on her neck with his foot, that she thought he was trying to make her unconscious, and that she thought she was going to die.

**5. Kidnapping— first-degree—evidence of removal—sufficient**

The trial court did not err by denying defendant's motion to dismiss charges of first-degree kidnapping where defendant contended that there was insufficient evidence of removal for the purpose of serious bodily injury. The State's evidence was sufficient to show that defendant induced the victim into his car on the pretext of paying her for a sexual act while his intent was to assault her.

**6. Constitutional Law— double jeopardy—assault inflicting serious injury—assault by strangulation**

Although not raised at trial, the issue of double jeopardy was reviewed under Rule 2 of the Rules of Appellate Procedure where defendant was sentenced for both assault inflicting serious injury and assault by strangulation. Language in N.C.G.S. § 14-32.4(b) indicates that the Legislature intended that a defendant be sentenced only for the higher of the offenses, assault inflicting serious bodily injury, and the case was remanded for resentencing.

**7. Appeal and Error— general objection at trial—basis for objection—apparent from context**

The trial court's decision to admit a victim's testimony to an officer was reviewed on appeal where only a general objection was made by defendant and the trial court overruled the objection without stating grounds, but it was clear from the context that the objection was based on hearsay.

**8. Evidence— hearsay—other evidence—same effect**

There was no prejudice from the admission of hearsay statements by a victim to an officer concerning missing money where other evidence provided sufficient evidence of a taking.

**9. Appeal and Error— plain error review—standard**

Plain error review requires that a different result probably would have been reached but for the error, a higher standard than a reasonable possibility of a different result without the evidence.

**10. Constitutional Law— confrontation clause—admission of hearsay—no prejudice**

Even if defendant had properly asserted plain error in contending that the confrontation clause was violated in the admission of hearsay statements from the victim, it cannot be said that the error affected the result of the trial with respect to this charge.

**11. Robbery— evidence sufficient—taking back money from prostitutes**

The trial court did not err by denying defendant's motion to dismiss a charge of common law robbery against one of several victims where there was substantial evidence of a taking, of force, and of defendant as perpetrator. Defendant's interactions

STATE v. WILLIAMS

[201 N.C. App. 161 (2009)]

with this and other victims clearly indicate that he intended to rob the victims and take back the money he had given them for sex.

**12. Assault— injuries caused by assault—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss a charge of assault inflicting serious bodily injury against this victim where defendant argued that there was insufficient evidence that the victim's injuries were caused by the assault. The nature of the injuries raised a reasonable inference that they were neither accidental nor self-inflicted, and the State was not required to exclude all other possible inferences as to their source.

**13. Assault— deadly weapon inflicting serious injury—sufficiency of evidence—use of hands as weapon**

The trial court did not err by denying defendant's motion to dismiss a charge of assault with a deadly weapon inflicting serious injury where there was sufficient evidence that defendant was the perpetrator and that he used his hands as a deadly weapon.

**14. Sexual Offenses— first-degree—sufficiency of evidence**

The trial court correctly denied defendant's motion to dismiss a charge of first-degree sex offense where defendant had paid the victim for a sexual act and defendant contended that the evidence was not sufficient. A reasonable mind could infer that the victim would not consent to the insertion of an object that would leave a five-inch gash requiring surgery, and the evidence of defendant as the perpetrator of other offenses against the victim was sufficient to support the conclusion that he was the perpetrator of this offense.

**15. Kidnapping— first-degree—sufficiency of evidence— removal—separate from other crimes**

The trial court correctly denied defendant's motion to dismiss a charge of first-degree kidnapping against one of several victims where defendant had paid the victim for a sexual act and then assaulted her. A reasonable mind could easily conclude that taking the victim to a secluded area was a separate transaction designed to reduce his risk of discovery.

**16. Constitutional Law— double jeopardy—basis of first-degree kidnapping**

There was no double jeopardy violation where defendant argued that second-degree kidnapping was elevated to first-degree kidnapping by a first-degree sexual offense against this victim, for which he was also sentenced. The jury was instructed on first-degree kidnapping based on a serious injury without reference to the sexual assault.

**17. Constitutional Law— double jeopardy—assault and first-degree kidnapping**

There was no double jeopardy violation in sentencing defendant separately for felonious assault and first-degree kidnapping where defendant argued that the assault was used to elevate second-degree kidnapping to first-degree kidnapping. Although the kidnapping instruction required a finding of abduction for the "purpose" of doing serious bodily injury, that is distinct from the actual commission of serious bodily injury required for assault inflicting serious bodily injury.

**18. Assault— continuous transaction with multiple injuries—one assault**

Defendant should have been sentenced only for assault with a deadly weapon inflicting serious injury where the evidence established a continuous transaction with multiple injuries rather than multiple assaults. Assault inflicting serious bodily injury was the lesser offense and that judgment was vacated.

**19. Robbery— sufficiency of evidence—use of force—purpose**

There was sufficient evidence for the trial court to deny defendant's motion to dismiss the charge of common law robbery where defendant argued that the use of force was in reaction to his failure to perform sexually, but there was evidence that the victim had left her possessions behind as she fled to safety. Moreover, defendant's statements and actions indicated that he intended to take the victim's property.

**20. Assault— inflicting serious bodily injury—no substantial risk of death**

The trial court erred by denying defendant's motion to dismiss the charge of assault inflicting serious bodily injury where the victim received a vicious beating but was not placed at substantial risk of death and there was no evidence of extreme pain.

**21. Constitutional Law— double jeopardy—separate counts—contemporaneous penetration**

There was no double jeopardy violation where the trial court denied defendant's motion to dismiss one count of first-degree sexual offense where the victim regained consciousness to find defendant's hands in her vagina and rectum. Each act is a separate offense; the occurrence of the acts in a single transaction is irrelevant.

**22. Kidnapping— first-degree—purpose of serious bodily harm—actual injury merely serious**

Defendant's contention that a charge of first-degree kidnapping involving one of several victims should have been dismissed was properly denied, because *inter alia*, there was substantial evidence that defendant's purpose in kidnapping this victim was to do her serious bodily harm, even if he only inflicted serious injury.

**23. Kidnapping— first-degree—elevation from second-degree—basis**

There was no error in the elevation of second-degree kidnapping to first-degree kidnapping where defendant contended that a first-degree sexual offense should not have been used for that purpose. There was no reference to sexual assault in the jury instructions.

**24. Kidnapping— first-degree—basis—assault by strangulation**

There was no double jeopardy violation in the elevation of kidnapping to first-degree kidnapping where a conviction for felonious assault was reversed but assault by strangulation remained. Assault by strangulation is clearly distinct from first-degree kidnapping.

**25. Robbery— purpose of force—evidence sufficient**

The trial court did not err by denying defendant's motion to dismiss a charge of common law robbery in a prosecution involving several victims where defendant argued that the violence to the victim was a reaction against his sexual inadequacy, but the evidence tended to show that he forcibly slammed the victim onto a concrete floor, cracked her head open, and strangled her, after which she lost consciousness and awoke to find that defendant, her money, and her purse were gone.

STATE v. WILLIAMS

[201 N.C. App. 161 (2009)]

**26. Assault— inflicting serious bodily injury—injuries sufficient**

There was sufficient evidence to deny defendant's motion to dismiss the charge of assault inflicting serious bodily injury where the victim sustained a puncture wound to the back of the scalp and a parietal scalp hematoma, and went into premature labor.

**27. Assault— with a deadly weapon inflicting serious injury—defendant's hands**

The trial court did not err by denying a motion to dismiss the charge of assault with a deadly weapon inflicting serious injury where the victim was a small-framed, pregnant, cocaine-addicted woman whom defendant threw to a concrete floor with his hands, cracking open her head. He then put his hands around her neck.

**28. Constitutional Law— double jeopardy—assault with a deadly weapon inflicting serious injury—assault inflicting serious bodily injury**

Defendant should not have been sentenced for both assault with a deadly weapon inflicting serious injury and assault inflicting serious bodily injury, and the later judgment was vacated.

**29. Robbery— common law—causing victim to flee and leave property**

The trial court did not err by denying defendant's motion to dismiss a charge of common law robbery where the State's evidence was that defendant beat the victim, ordered her to remove her clothes, went through her clothing, told her to give him the money he had given her for sex, and told her to run or he would get her. Defendant placed her in such fear as to cause her to flee, leaving the property with him.

Appeal by defendant from judgments entered 25 January 2008 by Judge Benjamin G. Alford in Wayne County Superior Court. Heard in the Court of Appeals 14 September 2009.

*Roy Cooper, Attorney General, by Anne M. Middleton, Assistant Attorney General, for the State.*

*William D. Spence, for defendant-appellant.*

**STATE v. WILLIAMS**

[201 N.C. App. 161 (2009)]

MARTIN, Chief Judge.

Defendant was charged in bills of indictment in which K.N.J.W.[1] was alleged to be the victim with first degree rape, first degree sex offense, common law robbery, assault inflicting serious bodily injury, assault with a deadly weapon inflicting serious injury, and first degree kidnapping. Defendant was charged in a bill of indictment in which M.L.W. was alleged to be the victim with two counts of first degree sex offense, common law robbery, assault inflicting serious bodily injury, assault by strangulation, and first degree kidnapping. Defendant was charged in a bill of indictment in which K.L.A. was alleged to be the victim with assault by strangulation, common law robbery, assault inflicting serious bodily injury, assault with a deadly weapon inflicting serious injury, and first degree kidnapping. Defendant was charged in a bill of indictment in which L.T. was alleged to be the victim with common law robbery, assault inflicting serious bodily injury, assault by strangulation, and first degree kidnapping. Defendant was charged in a bill of indictment in which C.D.S. was alleged to be the victim with common law robbery and assault on a female. Defendant entered pleas of not guilty to each of the charged offenses.

Upon the State's motion, all of the charged offenses were joined for trial. At the close of the State's evidence, the charge of first degree rape of K.N.J.W. was dismissed; defendant's motions to dismiss the remainder of the charges, made at the close of the State's evidence and at the close of all of the evidence, were denied. A jury rendered verdicts finding defendant not guilty of assaulting K.L.A. by strangulation, and guilty of each of the other offenses with which he was charged. He appeals from judgments entered upon the verdicts, sentencing him to consecutive sentences within the presumptive range totaling a minimum term of 1122 months and a maximum term of 1411 months in the custody of the North Carolina Department of Correction.

Briefly summarized, the State's evidence at trial tended to show that during the period from the cold months of late 2004 or early 2005 to 10 October 2006, defendant picked up five different women, who were apparently working as prostitutes, in Goldsboro, North Carolina. Four of the women, C.D.S., L.T., K.L.A., and M.L.W., testified that defendant negotiated with them for the performance of various

---

1. Each of the five alleged victims will be referred to by initials in order to protect their identities.

sexual acts in exchange for money and drove them to more secluded locations for performance of the acts. The women testified that defendant assaulted them, took the money he had given them and, while they fled or lay unconscious, he absconded with their personal belongings which had been left in his vehicle or at the scene. Defendant's admissions and testimony from witnesses, investigators, and hospital personnel established a similar set of circumstances for the fifth victim, K.N.J.W. We will summarize the evidence with respect to each of the victims in more detail only to the extent necessary to address defendant's assignments of error.

## L.T.

The State's evidence with respect to the charges relating to L.T. tended to show that during the cold months of late 2004 or early 2005, L.T. was picked up by a man, whom she identified as defendant, after midnight. They negotiated for a sexual act in exchange for money. They drove to a parking lot. Defendant gave L.T. money and tried to perform the sex act, but could not maintain an erection. Defendant then punched L.T. and told her "this is what I like, bitch" and immediately obtained an erection. Defendant pushed his knee into L.T.'s pelvic bone and pressed against her throat while she was struggling to get away. L.T. managed to get out of the vehicle and defendant grabbed her belongings as they fell out. He asked her, "where's my fucking money, bitch?" L.T. told him the money was in her pants. Then, defendant put his foot on her neck and pressed down with his weight. Defendant put his other foot on L.T.'s rib cage, pushing until she heard her rib pop. A man came out on the porch of a nearby house and asked if L.T. wanted him to call 911. Defendant gathered up L.T.'s belongings and fled.

[1] Defendant contends the trial court erred in denying his motion to dismiss the charge of common law robbery against L.T. In ruling upon a defendant's motion to dismiss in a criminal trial, "the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). Substantial evidence is defined as "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). "[S]o long as the evidence supports a reasonable inference of the defendant's guilt," the motion should be denied. *State v. Miller*, 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009). In addition, "[t]he reviewing court consid-

ers all evidence in the light most favorable to the State," *State v. Garcia*, 358 N.C. 382, 412, 597 S.E.2d 724, 746 (2004), *cert. denied*, 543 U.S. 1156, 161 L. Ed. 2d 122 (2005), and "[a]ny contradictions or discrepancies in the evidence are for the jury to resolve and do not warrant dismissal." *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992).

"Robbery at common law is the felonious taking of money or goods of any value from the person of another, or in his presence, against his will, by violence or putting him in fear." *State v. Black*, 286 N.C. 191, 193, 209 S.E.2d 458, 460 (1974). Defendant appears to concede both that force was used and property was taken, but contends that the force was not used to take the property, but was instead a reaction to his failure to perform sexually. L.T. was severely beaten by defendant until she sought refuge behind a telephone pole, leaving her possessions. Defendant's grabbing of her possessions and saying "where's my fucking money, bitch?" indicate his intent to take her property. The evidence shows that the victim was fearful enough of defendant to tell him that the money was in her jeans and to try to escape from his vehicle. In the light most favorable to the State, this shows that defendant intended to take, and did take, by force the money which he had earlier given to L.T. This assignment of error is overruled.

[2] Defendant next contends the trial court erred in denying his motion to dismiss the charge of assault inflicting serious bodily injury. Under N.C.G.S. § 14-32.4(a), this crime requires proof of (1) an assault and (2) infliction of serious bodily injury. *See* N.C. Gen. Stat. § 14-32.4(a) (2007). Under this statute, serious bodily injury is defined as "bodily injury that creates a substantial risk of death, or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization." *Id.*

Defendant contends the injury inflicted on L.T. was not serious bodily injury, as required by the statute. The evidence showed that as a result of defendant's assault upon her, L.T. suffered a cracked pelvic bone, a broken rib, torn ligaments in her back, and a deep cut over her left eye. She was also unable to have sex for seven months. The eye injury developed an infection which lingered for months and was never completely cured. The incident left a scar above her eye. The scar amounts to permanent disfigurement. This case is similar to *State v. Downs*, 179 N.C. App. 860, 635 S.E.2d 518, *disc. review dis-*

*missed and disc. review denied,* 361 N.C. 173, 640 S.E.2d 57 (2006), in which this Court held that the loss of a natural tooth, even one that could be replaced with a dental implant, was enough permanent disfigurement to go to the jury on the issue of serious bodily injury. *Downs,* 179 N.C. App. at 861-62, 635 S.E.2d at 520. L.T.'s injuries were sufficient for a reasonable mind to conclude that she had suffered serious bodily injury. Therefore, we overrule this assignment of error.

**[3]** Defendant next contends the trial court erred in denying his motion to dismiss the charge of assault by strangulation against L.T. Under N.C.G.S. § 14-32.4(b), the above crime is committed when a person (1) assaults another person (2) and inflicts physical injury (3) by strangulation. N.C. Gen. Stat. § 14-32.4(b).

Defendant first contends the indictment contained a "fatal" variance from L.T.'s testimony at trial. The indictment alleges that defendant strangled L.T. by placing his hands around her throat. Defendant contends L.T. testified that it was his elbow or his foot which was pressed against her neck. "A variance occurs where the allegations in an indictment, although they may be sufficiently specific on their face, do not conform to the evidence actually established at trial." *State v. Norman,* 149 N.C. App. 588, 594, 562 S.E.2d 453, 457 (2002).

L.T. testified that defendant pressed his foot or elbow on her neck. However, while on the witness stand, she also verified that in her statement to Goldsboro Police Investigator Learnard, which was entered into evidence, she had stated that defendant "put his hand upon [her] chest, pushing [her] neck." This testimony indicates there may not have been a variance at all. However, even if L.T.'s testimony was at variance with the allegations of the indictment, defendant's argument would fail because the variance was immaterial and thus not fatal. *State v. Craft,* 168 N.C. 208, 212, 83 S.E. 772, 744 (1914). An indictment based on a statutory offense is usually sufficient if "couched in the language of the statute." *State v. Palmer,* 293 N.C. 633, 638, 239 S.E.2d 406, 410 (1977). "The [indictment] is complete without evidentiary matters descriptive of the manner and means by which the offense was committed." *State v. Lewis,* 58 N.C. App. 348, 354, 293 S.E.2d 638, 642 (1982) (internal quotation marks omitted), *cert. denied,* 311 N.C. 766, 321 S.E.2d 152 (1984). Thus, the method of strangulation was surplusage and should be disregarded. *State v. Taylor,* 280 N.C. 273, 276, 185 S.E.2d 677, 680 (1972).

**[4]** Defendant next contends that his actions as alleged do not constitute actual strangulation. Defendant contends that in order to con-

stitute strangulation there must be evidence that the victim had difficulty breathing. Defendant cites *State v. Braxton*, 183 N.C. App. 36, 643 S.E.2d 637, *disc. review denied*, 361 N.C. 697, 653 S.E.2d 4 (2007), for this proposition. However, defendant reads the language of *Braxton* too narrowly. The defendant in *Braxton* also moved to dismiss the charge of assault by strangulation claiming the State had presented insufficient evidence that defendant strangled the victim. *Id.* at 42, 643 S.E.2d at 641. In affirming the trial court's decision denying the motion to dismiss, this Court held the evidence that the victim had been strangled to the point of having difficulty breathing was sufficient to comprise "strangulation" under the statute. *Id.* at 43, 643 S.E.2d at 642. However, the Court did not go as far as to require proof that the victim had difficulty breathing in order to satisfy the statutory requirements.

In her statement to Investigator Learnard, L.T. stated that she felt that defendant was trying to crush her throat, that he pushed down with his weight on her neck with his foot, that she thought he was trying to "chok[e] her out" or make her go unconscious, and that she thought she was going to die. We hold the foregoing evidence is also sufficient evidence of assault by strangulation. Thus, we overrule this assignment of error.

**[5]** Defendant next contends the trial court erred in denying his motion to dismiss the charges of first degree kidnapping against L.T. Kidnapping is defined in N.C.G.S. § 14-39 as:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

. . . .

(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person . . . .

N.C. Gen. Stat. § 14-39(a)(3) (2007). Section (b) of the statute describes the degrees of kidnapping. N.C. Gen. Stat. § 14-39(b). First degree kidnapping occurs "[i]f the person kidnapped either was not released by defendant in a safe place or had been seriously injured or sexually assaulted . . . ." *Id.* Kidnapping can be accomplished either by actual force or by fraud or trickery which "induce[s] the victim to

be removed to a place other than where the victim intended to be." *State v. Davis*, 158 N.C. App. 1, 13, 582 S.E.2d 289, 297 (2003).

Defendant contends there was insufficient evidence to show that he confined, restrained, or removed L.T. or that he did so for the purpose of causing her serious bodily injury. The State, however, points us to the similarities in the evidence with respect to L.T., K.N.J.W., M.L.W., and K.L.A., arguing that such evidence, taken together, shows a common plan and scheme by defendant to approach a prostitute, negotiate a sexual act in exchange for money, induce the woman to enter his car and move to a more secluded location, while having the intent to beat the woman, and rob her of her belongings, including the money which he had earlier paid her. In addition, the State argues that defendant's statements to L.T. after he hit her that "this is what I like, bitch," and his achieving an erection after hitting her show that defendant knew he desired violence against another person and induced the women to get in his vehicle for that express purpose. We agree. We hold the State's evidence is sufficient to show that at the time defendant induced L.T. to enter his car on the pretext of paying her money in return for a sexual act, his intent was to assault her. In addition, we hold that a reasonable mind could conclude from the evidence that had L.T. known of such intent, she would not have consented to have been moved by defendant from the place where she first encountered him.

[6] Finally, defendant contends his rights under the Fifth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution have been violated by sentencing him under both N.C.G.S. § 14-32.4(a) for assaulting L.T. and inflicting serious bodily injury and N.C.G.S. § 14-32.4(b) for assaulting L.T. by strangulation. Defendant did not raise this issue at trial. It is well established that "a constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal." *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982). Nevertheless, defendant contends the issue is reviewable as "plain error." Plain error analysis, however, "applies only to instructions to the jury and evidentiary matters." *State v. Greene*, 351 N.C. 562, 566, 528 S.E.2d 575, 578, *cert. denied*, 531 U.S. 1041, 148 L. Ed. 2d 543 (2000). Since the issue implicates neither jury instructions or evidentiary rulings, it is not properly reviewable as "plain error."

Finally, defendant urges us to exercise our discretionary powers under Rule 2 of the North Carolina Rules of Appellate Procedure. N.C.R. App. P. 2. Rule 2 is used to suspend the rules of appellate pro-

cedure in order to "prevent manifest injustice" and has been used to review a case for double jeopardy even when the issue was not raised at trial. *Id.*; *State v. Dudley*, 319 N.C. 656, 659, 356 S.E.2d 361, 364 (1987). Rule 2 discretion should be exercised "cautiously" and only in "exceptional circumstances." *State v. Hart*, 361 N.C. 309, 315, 644 S.E.2d 201, 205 (2007) (internal quotation marks omitted from second quotation). We choose to exercise this discretionary power to review defendant's contentions with respect to double jeopardy.

The prohibition against double jeopardy contained in the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and which has been deemed a part of the North Carolina Constitution through the "law of the land" provision of Article I, Section 19, prohibits a defendant from receiving multiple punishments for the same offense. *State v. Cameron*, 283 N.C. 191, 197, 195 S.E.2d 481, 485 (1973). "The burden is upon defendant to sustain his plea of double jeopardy." *State v. Cutshall*, 278 N.C. 334, 343, 180 S.E.2d 745, 750 (1971). We review double jeopardy issues *de novo*. *State v. Hagans*, 188 N.C. App. 799, 804, 656 S.E.2d 704, 707, *disc. review denied*, 362 N.C. 511, 668 S.E.2d 344 (2008).

Defendant contends the language in N.C.G.S. § 14-32.4(b), "[u]nless the conduct is covered under some other provision of law providing greater punishment," is an indicator of legislative intent to prohibit a court from sentencing a defendant for the same conduct under both N.C.G.S. § 14-32.4(b) and N.C.G.S. § 14-32.4(a) because the former is a Class H felony and the latter is a Class F felony. We agree.

In *State v. Ezell*, 159 N.C. App. 103, 582 S.E.2d 679 (2003), this Court held that legislative intent would rebut the presumption created by *Blockburger v. United States*, 284 U.S. 299, 76 L. Ed. 306 (1932), that two offenses are not considered the same for the purposes of double jeopardy if each offense requires proof of an element that the other does not. *Ezell*, 159 N.C. App. at 109, 582 S.E.2d at 684. In *Ezell*, the Court went on to hold that the language "[u]nless the conduct is covered under some other provision of law providing greater punishment" indicated legislative intent to punish certain offenses at a certain level, but that if the same conduct was punishable under a different statute carrying a higher penalty, defendant could only be sentenced for that higher offense. *Id.* at 111, 582 S.E.2d at 685. This same analysis was used by this Court in *State v. McCoy*, 174 N.C. App. 105, 620 S.E.2d 863 (2005), *supersedeas and disc.*

*review denied*, 628 S.E.2d 8 (2006), to hold that a defendant could not be sentenced for the same conduct under both N.C.G.S. § 14-33(c)(1), which also contains the quoted language, and N.C.G.S. § 14-32(b). *McCoy*, 174 N.C. App. at 116, 620 S.E.2d at 871-72. Thus, even though N.C.G.S. § 14-32.4(a) and (b) require proof of different elements, so as to be distinct crimes under *Blockburger*, the insertion of the quoted language in the statute indicates the intent of the legislature that a defendant only be sentenced for the higher of the two offenses, assault inflicting serious bodily injury. Thus, we must vacate the judgment entered upon defendant's conviction in 06 CRS 57321, count 19. Since that conviction was consolidated with defendant's convictions of common law robbery, assault inflicting serious bodily injury, and first degree kidnapping in 06 CRS 057321, counts 17, 18 and 20, we must remand these convictions to the trial court for resentencing. *State v. Wortham*, 318 N.C. 669, 674, 351 S.E.2d 294, 297 (1987).

K.N.J.W.

With respect to the charges relating to K.N.J.W., the State's evidence tended to show that around 7:45 on the morning of 10 October 2006, K.N.J.W. knocked on the door of Justin Wiggs who lived across from Peacock Park. She was bleeding from her mouth and vaginal area. She told Mr. Wiggs that she had awakened in the park and did not know what had happened to her. Mr. Wiggs called an ambulance, and K.N.J.W. was transported to the hospital. On the way to the hospital, K.N.J.W. told Wayne County EMS employee Kari McCallister that she had been picked up on George Street by an African-American male, and provided a description of the man and the vehicle he was driving. In the meantime, after the ambulance had departed with K.N.J.W., Mr. Wiggs, curious about what had occurred, went to Peacock Park where he encountered a man he identified at trial as defendant. At the hospital, K.N.J.W. told the emergency room nurse that she had been assaulted by the man who picked her up. The nurse collected evidence for a rape kit and bagged K.N.J.W.'s clothes to give to the police department. K.N.J.W. sustained a vaginal laceration, four to five inches in length, and lost nearly a quart of blood by reason thereof. She sustained injuries to her head and face, as well as multiple fractures to her jaw requiring the surgical insertion of titanium bone plates.

Later the same day, Investigator Learnard visited K.N.J.W., who gave her details about the person who had assaulted her. In combination with the information K.N.J.W. had given to Kari McCallister,

**STATE v. WILLIAMS**

[201 N.C. App. 161 (2009)]

these details led Investigator Learnard to defendant. Investigator Learnard questioned defendant, who initially denied being at the park, but later admitted being in the park and paying K.N.J.W. for oral sex.

**[7]** Defendant's first assignment of error relates to the trial court's admission of a statement by Investigator Learnard. Investigator Learnard testified that when she visited K.N.J.W. in the emergency room, K.N.J.W. stated that when she awoke in the park her bra was hiked up and the money she had placed there was missing. Defendant first contends that this statement was inadmissible hearsay and its admission by the trial court was in error.

At trial, defendant's counsel made only a general objection to the admission of the statement. The trial court overruled the statement without stating grounds and defendant did not ask for clarification of the grounds. Rule 10(b)(1) of the North Carolina Rules of Appellate procedure requires that specific grounds be given for an objection unless the grounds are clear from the context. N.C.R. App. P. 10(b). In the context of the investigator's testimony, it is clear that the objection was made on hearsay grounds. Therefore, we will review the trial court's decision to admit the statement.

**[8]** Hearsay is defined under the North Carolina Rules of Evidence as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, N.C.R. Evid. 801(c) (2007). The statement at issue was "[K.N.J.W.] had stated when she woke up, that her bra was hiked up on one side and her money was missing." K.N.J.W.'s statement was clearly offered to prove the truth of the statement—that the money was missing, and there is no contention by the State that the statement was being offered for any non-hearsay purpose, or that it was admissible under any of the exceptions to the hearsay rule. Thus, the admission of the statement was error.

Nevertheless, defendant must demonstrate prejudice from the erroneous admission of the evidence. N.C. Gen. Stat. § 15A-1442(4)(c) (2007); *State v. Bass*, 190 N.C. App. 339, 348, 660 S.E.2d 123, 129, *cert. denied and appeal dismissed*, 362 N.C. 683, 670 S.E.2d 566 (2008). Defendant contends he was prejudiced because the hearsay statement was the only evidence of a taking to sustain the charge of common law robbery. We disagree. Even without K.N.J.W.'s statement, other evidence provides sufficient evidence of a taking. Defendant

admitted to Investigator Learnard that he gave K.N.J.W. money in exchange for oral sex and that K.N.J.W. put the money in her bra. Investigator Learnard testified that no money was found at the scene of the crime. A nurse testified that she collected K.N.J.W.'s clothes at the hospital. The inventory of K.N.J.W.'s clothing does not include any money. In addition, a crack pipe with K.N.J.W.'s DNA was found in defendant's car.

Defendant next contends the admission of this statement violated the Confrontation Clause of the United States Constitution. Defendant appears to concede that this constitutional issue was not specifically raised at trial and therefore cannot be reviewed for the first time on appeal. *State v. Chapman*, 359 N.C. 328, 354, 611 S.E.2d 794, 822 (2005). However, defendant argues that this error should be reviewed for plain error. Plain error review requires that defendant show that the error was "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988).

**[9]** In his brief discussing plain error review, defendant alleges none of the elements required of him for plain error review. However, in a previous section of his brief, defendant contends that because there was no other evidence of money or property having been taken from K.N.J.W. to support the common law robbery charge "there is a reasonable possibility that, had this testimony not been admitted in evidence, a different result would have been reached at trial." Plain error review, however, requires a higher standard, i.e., that a different result "probably would have been reached but for the error." *State v. Cummings*, 352 N.C. 600, 637, 536 S.E.2d 36, 61 (2000) (internal quotation marks omitted), *cert. denied*, 532 U.S. 997, 149 L. Ed. 2d 641 (2001).

**[10]** Even had defendant properly asserted plain error, we cannot say that the erroneous admission of Investigator Learnard's hearsay testimony probably affected the result of the trial with respect to the common law robbery of K.N.J.W. As discussed above, there was substantial evidence that a taking occurred. This assignment of error is overruled.

Defendant's next five assignments of error are based on the trial court's denial of his motion to dismiss various charges relating to K.N.J.W.

[11] Defendant first contends the trial court erred in denying his motion to dismiss the charge of common law robbery against K.N.J.W. Defendant contends the State failed to introduce sufficient evidence that (1) a taking occurred, (2) that force was used to accomplish the taking, and (3) that defendant was the perpetrator.

Defendant argues that the hearsay statement of Investigator Learnard discussed above is the only evidence of a taking, and without it the State's evidence of common law robbery is insufficient. However, in considering a motion to dismiss, "[a]ll evidence actually admitted, both competent and incompetent, which is favorable to the State must be considered." *State v. Bullard*, 312 N.C. 129, 160, 322 S.E.2d 370, 388 (1984). In addition, as discussed above, even without the statement from Investigator Learnard, there was substantial evidence of a taking.

There is also substantial evidence that force was used to take the money from K.N.J.W. The State presented evidence that K.N.J.W. was picked up by someone matching defendant's description at around 8:00 a.m. on the morning of 10 October 2006. There was no evidence that she was injured at that time. By 8:22 a.m., Kari McCallister, with Wayne County EMS, arrived to find K.N.J.W. battered and bleeding from her head and vaginal area.

There is also ample evidence to support a reasonable inference that defendant was the perpetrator. Shoe prints matching defendant's shoes placed him at the scene. Defendant also admitted to investigators that he was with the victim at the scene on the morning in question. A receipt found at the scene bearing his name indicates that he was in the area sometime after 7:35 a.m. on 10 October 2006. A crack pipe with K.N.J.W.'s DNA was found in defendant's vehicle. His description matches that given by the victim to investigators. In addition, defendant was encountered by Justin Wiggs at the scene not long after the events occurred. Defendant also told conflicting stories to investigators. Such evidence can be used to show consciousness of guilt. *State v. Redfern*, 246 N.C. 293, 297-98, 98 S.E.2d 322, 326 (1957).

The present case can be distinguished from such cases as *State v. Holland*, 234 N.C. 354, 67 S.E.2d 272 (1951), and *State v. Murphy*, 225 N.C. 115, 33 S.E.2d 588 (1945), in which the victims were rendered unconscious by the defendants and regained consciousness bereft of their property. *Holland*, 234 N.C. at 356-59, 67 S.E.2d at 273-75; *Murphy*, 225 N.C. at 115, 33 S.E.2d 588. Our Supreme Court, in the

above cases, held that the mere opportunity for defendants to take the property was not enough to establish common law robbery. *Holland*, 234 N.C. at 359, 675 S.E.2d at 275; *Murphy*, 225 N.C. at 117, 33 S.E.2d at 590.

In *Holland*, the victim was found unconscious in his home seven hours after an attack. *Holland*, 234 N.C. at 356, 67 S.E.2d at 273. When he awoke eight days later in the hospital, he realized some of his property was missing. *Id.* at 358, 67 S.E.2d at 275. Here, K.N.J.W. was picked up by defendant, was paid money to perform oral sex, and lost consciousness. When K.N.J.W. woke up in the park, the money she had been given was missing. All of this occurred sometime between 7:35 a.m. (the time on defendant's receipt found in the dugout) and 8:16 a.m. (when EMS was dispatched). This short period of time distinguishes this case from the facts of *Holland*. In *Murphy* and *Holland*, there was also evidence of other potential suspects. In *Murphy*, other people were around who witnessed the assault and some moved his unconscious body out of the street. *Murphy*, 225 N.C. at 116, 33 S.E.2d at 588. In *Holland*, nine people lived in the victim's home. *Holland*, 234 N.C. at 358, 67 S.E.2d at 275. In the present case, there was no evidence of the presence of any intervening persons. The State's witness Justin Wiggs stated that he went to the park after the ambulance had left with K.N.J.W. He did not see anyone or any cars in the parking lot until he encountered defendant. In addition, in the present case, unlike *Murphy* and *Holland*, defendant was found in possession of some property, the crack pipe, bearing K.N.J.W.'s DNA. Finally, the court in both *Holland* and *Murphy* noted that robbery did not seem to be the motive for the assault. In *Murphy*, the defendants claimed they were trying to disarm the victim who threatened them. *Murphy*, 225 N.C. at 116, 33 S.E.2d at 588-89. In *Holland*, money was left in the victim's cab and on the victim's person. *Holland*, 234 N.C. at 359, 67 S.E.2d at 275. Here, defendant's interactions with K.N.J.W. and the other victims more clearly indicate that he intended to rob the victims and take back the money he had given them. These distinctions establish that defendant had more than a "mere opportunity" to take the victim's property. For the above reasons, we overrule this assignment of error.

**[12]** Defendant next contends the trial court erred in denying his motion to dismiss the charge of assault inflicting serious bodily injury on K.N.J.W. Defendant argues that the State presented insufficient evidence that K.N.J.W.'s injuries were caused by an assault or that defendant was the perpetrator of the assault against K.N.J.W.

Defendant does not dispute that K.N.J.W. sustained "serious bodily injury" from the brutal assault, and the evidence of that fact is beyond question. The nature of the injuries themselves give rise to a reasonable inference that they were neither accidental nor self-inflicted, and the State "is not required to exclude all other possible inferences" as to the source of K.N.J.W.'s injuries in order to withstand a motion to dismiss. *Davis*, 158 N.C. App. at 14, 582 S.E.2d at 298.

With regard to the perpetrator's identity, the same evidence which supports the conclusion that defendant was the perpetrator of the common law robbery on K.N.J.W. supports the conclusion that he perpetrated the assault on K.N.J.W. Therefore, we overrule this assignment of error.

**[13]** Defendant next contends the trial court erred in denying his motion to dismiss the charge of assault with a deadly weapon inflicting serious injury. According to the North Carolina General Statutes, the above crime requires an (1) assault of another person, (2) with a deadly weapon, and (3) infliction of serious injury. *See* N.C. Gen. Stat. § 14-32(b) (2007). Defendant contends that there is insufficient evidence to show that he was the perpetrator of the assault against K.N.J.W. The same evidence which supports the conclusion that defendant committed common law robbery of K.N.J.W. and committed the assault inflicting serious bodily injury supports the conclusion that defendant was the perpetrator of this crime.

Defendant also contends there was insufficient evidence that a deadly weapon was used in his assault upon K.N.J.W. We disagree. This Court has held that an assailant's hands may be considered a deadly weapon considering the manner in which they were used and relative size and condition of the parties. *State v. Allen*, —— N.C. App. ——, ——, 667 S.E.2d 295, 301 (2008). In the present case, the evidence shows that defendant was a big stocky man, probably larger than K.N.J.W., who was a female and a likely user of crack cocaine. Given the nature of the injuries sustained by K.N.J.W., the location of the assault, the similarity in the evidence of the assault upon K.N.J.W. with an assault on K.L.A. just five days earlier at the same location, we believe the evidence is substantial that defendant used his hands as deadly weapons to assault K.N.J.W. to the point of inflicting serious injury. This assignment of error is overruled.

**[14]** Defendant next contends the trial court erred in denying his motion to dismiss the charge of first degree sex offense. According to

N.C.G.S. § 14-27.4, first degree sexual offense is committed if a person (1) engages in a sexual act, (2) with another person by force and against her will, and either (3) "[e]mploys or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon" or (4) "inflicts serious personal injury upon the victim or another person." N.C. Gen. Stat. § 14-27.4 (2007). Defendant argues there is insufficient evidence (1) of the nature of the sexual act which caused the injuries to K.N.J.W., (2) that the sexual assault was against the will of K.N.J.W., or (3) that defendant was the perpetrator of said sexual assault.

The State has presented sufficient evidence that some sexual act caused the injuries to K.N.J.W. A sexual act is defined by statute as "cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body . . . ." N.C. Gen. Stat. § 14-27.1 (2007). Dr. Lies, the operating physician in the emergency room, testified that the laceration in K.N.J.W.'s vagina was likely caused by the insertion of an object, possibly a fist, but not a penis. This meets the statutory definition of a sexual act. Again, the State is not required to rule out all other sources of injury to withstand a motion to dismiss. *Davis*, 158 N.C. App. at 14, 582 S.E.2d at 298.

Defendant also contends there was insufficient evidence to show that K.N.J.W. did not consent to the sexual act. By defendant's own admission he was only to receive oral sex from K.N.J.W.; she did not consent to having any objects inserted into her vagina. In addition, a reasonable mind could infer that she would not consent to having an object inserted into her vagina which would leave a five-inch gash requiring surgery.

The evidence sufficient to support a conclusion that defendant was the perpetrator of the robbery and other assaults against K.N.J.W. are sufficient to support the conclusion that he also perpetrated this sexual offense against her. This assignment of error is overruled.

[15] Defendant next contends that the trial court erred in denying his motion to dismiss the charges of first degree kidnapping of K.N.J.W. As with L.T., defendant again contends there was insufficient evidence to show that he confined, restrained, or removed K.N.J.W. or that he did so for the purpose of causing her serious bodily injury. We reject his argument for the same reasons discussed regarding

defendant's contentions with respect to the first degree kidnapping charges in which L.T. was alleged to be the victim.

Defendant also contends any restraint or removal of K.N.J.W. was an inherent element of other felonies alleged to have been committed against her. This contention is likewise without merit. When kidnapping and another felony arise out of the same transaction, reviewing courts have examined the actions of the defendant to determine whether the kidnapping was a separate course of action to prevent the hindering of the commission of the other offense. *State v. Newman*, 308 N.C. 231, 239, 302 S.E.2d 174, 181 (1983) (holding that the removal of the victim to a wooded area to rape her was not "inherent in the commission of the crime of rape," but rather "a separate course of conduct designed to remove her from the view of a passerby who might have hindered the commission of the crime"). Here, a reasonable mind could easily conclude that defendant's acts in taking K.N.J.W. to a secluded area was a separate transaction designed to reduce his risk of discovery and hindrance of the crime. These assignments of error are overruled.

**[16]** Defendant further argues that his commission of first degree sexual offense upon K.N.J.W. was used to elevate the kidnapping charge to first degree kidnapping. Thus, he contends his sentencing for both offenses violates his rights against double jeopardy. His argument must fail because the jury was instructed that to convict defendant of first degree kidnapping of K.N.J.W., it was required to find that the victim was "seriously injured." There was no reference to the sexual assault in the jury instructions. Jurors are presumed to follow the instructions of the trial court. *State v. Tirado*, 358 N.C. 551, 593, 599 S.E.2d 515, 543 (2004), *cert. denied*, 544 U.S. 909, 161 L. Ed. 2d 285 (2005). Thus, we overrule this assignment of error.

**[17]** Defendant further contends the imposition of separate sentences for both his conviction of felonious assault upon K.N.J.W. and his conviction of first degree kidnapping upon her violates the prohibition of multiple punishments for the same act because his commission of the assault was used to elevate the kidnapping charge to first degree kidnapping.

Under the test outlined in *Blockburger*, two offenses are distinct for the purposes of double jeopardy if they each require proof of an element the other does not. 284 U.S. at 304, 76 L. Ed. at 309. First degree kidnapping contains the additional element of restraint or confinement that is not statutorily required for conviction of

the offense of assault inflicting serious bodily injury. N.C. Gen. Stat. § 14-39 (2007); N.C. Gen. Stat. § 14-32.4(a) (2007). In order to elevate second degree kidnapping to first degree kidnapping, the jury in this case was required to find that the victim was seriously injured. Assault inflicting serious bodily injury requires additional proof of "serious bodily injury" beyond the "serious injury" needed to prove first degree kidnapping. *State v. Williams*, 150 N.C. App. 497, 503, 563 S.E.2d 616, 619-20 (2002). We note that although the jury charge for kidnapping required a finding that the women were abducted "for the purpose of doing serious bodily injury" which more closely coincides with the charge of assault inflicting serious bodily injury, we conclude that "for the purpose of" and the actual act of committing serious bodily injury are two different elements, the latter being more serious than the former. Thus, defendant's argument fails and this assignment of error is overruled.

[18] Finally, defendant contends the trial court erred in sentencing him for both assaulting K.N.J.W. with a deadly weapon inflicting serious injury and assaulting her inflicting serious bodily injury. We must agree. "In order for a defendant to be charged with multiple counts of assault, there must be multiple assaults. This requires evidence of a distinct interruption in the original assault followed by a second assault." *McCoy*, 174 N.C. App. at 115, 620 S.E.2d at 871 (citations and internal quotation marks omitted). The evidence in the present case does not establish two separate assaults upon K.N.J.W., rather it establishes multiple injuries resulting from one continuous transaction. Therefore, defendant should have been sentenced only for the greater of the two offenses, assault with a deadly weapon inflicting serious injury. We must therefore vacate the judgment entered upon defendant's conviction of assault upon K.N.J.W. inflicting serious bodily injury in case 06 CSR 57025, count 3.

### M.L.W.

With respect to M.L.W., the State's evidence tended to show that in early June of 2006, a man, identified as defendant, approached M.L.W. in his vehicle and told her to get inside the car. They negotiated for a sexual act in exchange for money. They drove to a location full of empty lots from flooded-out homes. Defendant gave M.L.W. money and she began to perform the sex act. Defendant was unable to achieve an erection and hit M.L.W. so hard that she fell to the ground. Defendant began kicking M.L.W. in the ribs; then picked her up by her neck and squeezed while he swung her body. She passed out. She woke up with her head under the wheel of defendant's ve-

hicle as if he had placed her there. Defendant had his fingers in her vagina and in her rectum. He kept asking her "where's my money, bitch?" The money had been in M.L.W.'s hand and had fallen out during the beating. Defendant went over to where the money was laying and M.L.W. took this opportunity to flee, leaving her personal property with defendant.

[19] Defendant contends the trial court erred in denying his motion to dismiss the charge of common law robbery against M.L.W. He admits the use of force, but denies that the force was used to take M.L.W.'s property. Instead, he claims the violence was a reaction to his inability to sexually perform. In addition, defendant contends there is a lack of evidence to show that he was the one who took the property of M.L.W.

With regard to the force element, the State has presented evidence that defendant punched, kicked, threatened to kill, and strangled M.L.W. until she lost consciousness. When defendant was momentarily distracted, she fled leaving her possessions behind. The force element required for common law robbery requires violence or fear "sufficient to compel the victim to part with his property." *State v. Sipes*, 233 N.C. 633, 635, 65 S.E.2d 127, 128 (1951), or "to prevent resistance to the taking." *State v. Sawyer*, 224 N.C. 61, 65, 29 S.E.2d 34, 37 (1944) (internal quotation marks omitted). The force used by defendant was sufficient to compel M.L.W. to part with her possessions, leaving them behind as she fled to safety.

In addition, defendant's statement, "where's my money, bitch?," made to M.L.W. as he was assaulting her, indicates that he intended to take the money from her and provides circumstantial evidence that he did take it. Defendant also went over to where M.L.W.'s property had fallen from her hand, again indicating that he intended to take property from her. After M.L.W. had fled, leaving her property, she watched defendant leave in his vehicle and almost immediately went to retrieve her property and found it missing. In the light most favorable to the State, this evidence is substantial to allow a reasonable mind to draw the conclusion that defendant took M.L.W.'s property. We overrule this assignment of error.

[20] Defendant next contends the trial court erred in denying his motion to dismiss the charge of assault inflicting serious bodily injury on M.L.W. Defendant alleges there was insufficient evidence to show that M.L.W. suffered serious bodily injury. This Court has held that N.C.G.S. § 14-32.4(a) was meant to "cover those assaults that are

especially violent and result in the infliction of extremely serious injuries." *Williams,* 150 N.C. App. at 503, 563 S.E.2d at 619. Thus, " 'serious bodily injury' . . . requires proof of more severe injury than the 'serious injury' element of other assault offenses." *Id.* at 503, 563 S.E.2d at 619-20. As noted above, "serious bodily injury" is injury which "creates a substantial risk of death, or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization." N.C. Gen. Stat. § 14-32.4(a). Serious injury has been defined as an injury which is serious, but falls short of death. *See State v. Jones,* 258 N.C. 89, 91, 128 S.E.2d 1, 3 (1962).

While the State has presented sufficient evidence of "serious injury," the State has failed to show "serious bodily injury" on the part of M.L.W. While M.L.W. received a vicious beating, the evidence does not show that her injuries placed her at substantial risk of death. Though her ribs were still "sore" five months after the assault, in order to meet the statutory definition, the victim must experience "extreme pain" in addition to the "protracted condition." N.C. Gen. Stat. § 14-32.4(a); *State v. Brown,* 177 N.C. App. 177, 188, 628 S.E.2d 787, 793-94 (2006). The State presented no evidence of extreme pain. Therefore, the trial court erred in denying defendant's motion to dismiss the charge of an assault upon M.L.W. inflicting serious bodily injury, and we must reverse his conviction of that offense in Case No. 06 CRS 57321 as contained in count 9 of the bill of indictment.

Defendant next contends the trial court erred in denying his motion to dismiss the charge of assault by strangulation against M.L.W. Defendant claims that he should only be charged with either assault inflicting serious bodily injury or assault by strangulation. We need not address defendant's contention as we have previously determined that the charge under N.C.G.S. § 14-32.4(a) should have been dismissed.

[21] Defendant also contends the trial court erred in denying his motion to dismiss at least one of the charges of first degree sexual offense against M.L.W. and in sentencing him for two counts of first degree sexual offense against M.L.W. He contends his conviction of, and punishment for, two counts of first degree sexual offense for inserting his fingers in her vagina and in her rectum during a single incident violates his double jeopardy rights. We disagree.

Defendant cites *State v. Laney*, 178 N.C. App. 337, 631 S.E.2d 522 (2006), in support of his contention that he should not be sentenced for both counts of first degree sexual offense. In *Laney*, defendant touched both the victim's breasts and put his hands under her waistband. *Laney*, 178 N.C. App. at 341, 631 S.E.2d at 525. This Court held that there was one single act of touching and not multiple sexual acts. *Id.* However, in *State v. James*, 182 N.C. App. 698, 643 S.E.2d 34 (2007), this Court, in distinguishing *State v. Laney*, stated that as opposed to mere touching, "multiple sexual acts, even in a single encounter, may form the basis for multiple indictments for indecent liberties." *James*, 178 N.C. App. at 705, 643 S.E.2d at 38. Thus, this Court found that a different analytical path should be applied when dealing with "sexual acts" as opposed to touching in the context of charges of indecent liberties. *Id.* This Court subsequently suggested in *State v. Gobal*, 186 N.C. App. 308, 651 S.E.2d 279 (2007), *aff'd per curiam*, 362 N.C. 342, 661 S.E.2d 732 (2008), that this same logic would apply to charges of sexual offense. *Gobal*, 186 N.C. App. at 322 n.7, 651 S.E.2d at 288 n.7 ("If defendant had properly preserved this issue . . . we would affirm. . . . Even when multiple sex acts occur in a 'single transaction' or a short span of time, each act is a distinct and separate offense.").

Defendant attempts to distinguish *Gobal* by stating that in *Gobal* the sexual acts occurred in sequence whereas, in our case, M.L.W. regained consciousness to find defendant's hands in her vagina and her rectum at the same time. However, in neither *Gobal* nor *James* does this Court make noncontemporaneous penetration a requirement to charge defendant with two separate counts of sexual offense or indecent liberties. *See id.*; *James*, 178 N.C. App. at 705, 643 S.E.2d at 38. In fact, this Court in *Gobal* notes that the occurrence of the acts in a "single transaction" is irrelevant. *Gobal*, 186 N.C. App. at 322 n.7, 651 S.E.2d at 288 n.7. We, therefore, overrule this assignment of error.

[22] Defendant also contends, for the same reasons as in his argument with respect to L.T., that the charge of first degree kidnapping of M.L.W. should have been dismissed. For the same reasons as previously stated in our discussion of his similar contentions with respect to L.T., we reject his argument. In addition, though we have concluded the charge of assault inflicting serious bodily injury should have been dismissed by reason of the insufficiency of the evidence that the injuries sustained by M.L.W. amount to "serious bodily injury," we believe the evidence was substantial that defendant's pur-

pose in kidnapping her was to do her serious bodily harm, even if he only inflicted "serious injury" upon her.

[23] Defendant further argues that his commission of first degree sexual offense upon M.L.W. was used to elevate the kidnapping charge to first degree kidnapping. However, the jury was instructed with regard to the kidnapping charge that a required element for defendant to be convicted of first degree kidnapping was that the victim had been "seriously injured or not released in a safe place." There was no reference to the sexual assault in the jury instructions. This assignment of error is overruled.

[24] Defendant also contends the charge of kidnapping was elevated to first degree based on the felonious assault, thereby violating double jeopardy. We disagree. As we have reversed defendant's conviction for assault inflicting serious bodily injury, the assault which we must examine is assault by strangulation. This assault is clearly distinct from the crime of kidnapping in the first degree and thus this assignment of error is overruled.

## K.L.A.

With respect to the charges in which K.L.A. is alleged to have been the victim, the State's evidence tended to show on 5 October 2006, K.L.A. was pregnant and working as a prostitute. At approximately 8:00 a.m. on that date, she was approached by a man, identified as defendant, who told her that he wanted oral sex. He took her to Peacock Park. They went to the dugout at the park and defendant gave K.L.A. some money. She attempted to perform the sex act but defendant did not get an erection. He picked up K.L.A. and slammed her down on the concrete floor of the dugout twice. Her head was cracked open and she began to lose consciousness. Defendant put his hands around her neck. When she regained consciousness, defendant and the money were gone. She was bleeding from her head and vaginal area. Later, she went to the emergency room. A few days later, she went into premature labor.

[25] Defendant contends the trial court erred in denying his motion to dismiss the charge of common law robbery against K.L.A., arguing the evidence was insufficient to show that the force which he used was for the purpose of taking K.L.A.'s property. He contends the violence was a reaction to his inability to achieve an erection, and that there was insufficient evidence to show that he was the person who took K.L.A.'s property.

Taken in the light most favorable to the State, the evidence tends to show that defendant forcibly slammed K.L.A. onto the concrete floor of the dugout, cracked her head open, and strangled her, after which she lost consciousness and awoke to find defendant and her money gone. Her purse, which had been in defendant's vehicle, was gone as well. This evidence is adequate for a reasonable mind to draw the conclusion that defendant took K.L.A.'s property by the use of force. This assignment of error is overruled.

[26] Defendant next contends the trial court erred in denying his motion to dismiss the charge of assault inflicting serious bodily injury on K.L.A. We believe the State's evidence with respect to the injuries inflicted upon K.L.A. is substantial to show the infliction of serious bodily injury as defined by N.C.G.S. § 14-32.4(a). K.L.A. sustained a puncture wound to the back of her scalp and a parietal scalp hematoma. Additionally, she went into premature labor as a result of the attack. This was sufficient evidence for a reasonable mind to conclude that she was placed at substantial risk of death and suffered serious bodily injury within the definition of N.C.G.S. § 14-32.4(a). This assignment of error is overruled.

[27] Defendant next contends the trial court erred in denying his motion to dismiss the charge of assaulting K.L.A. with a deadly weapon inflicting serious injury. As he did with respect to K.N.J.W., defendant contends that there was insufficient evidence that a deadly weapon was used in the assault. Again, we disagree.

K.L.A. was a small-framed, pregnant woman with a cocaine addiction. She testified that defendant used his hands to throw her onto the concrete floor, cracking her head open. Defendant also put his hands around her neck. Defendant's attacks on K.L.A. using his hands, or his hands in combination with the concrete floor, would be adequate to allow a reasonable mind to draw the conclusion that defendant's hands were used as a deadly weapon in the assault. This assignment of error is overruled.

Defendant assigns error to the denial of his motion to dismiss the charge of first degree kidnapping of K.L.A. For the same reasons discussed regarding his similar contention with respect to such charge in which L.T. was alleged to be the victim, we reject his contentions and find no error in the submission of such charge to the jury.

Defendant also contends the felonious assault was used to elevate the kidnapping charge to first degree in violation of double jeop-

ardy. However, as discussed in the case of K.N.J.W., the two offenses each contain an additional element that the other does not. Thus, we overrule this assignment of error.

[28] Finally, defendant contends the trial court erred in sentencing him for both assaulting K.L.A. with a deadly weapon inflicting serious injury and assaulting her inflicting serious bodily injury. The State concedes that defendant should only have been sentenced for one of the above crimes under *State v. Ezell*, 159 N.C. App. 103, 111, 582 S.E.2d 679, 685 (2003) (holding that a conviction and sentence for both assault with a deadly weapon inflicting serious injury and assault inflicting serious bodily injury for the same conduct was a violation of double jeopardy). Thus, we must vacate the judgment entered upon defendant's conviction of assaulting K.L.A. inflicting serious bodily injury in 06 CSR 57321, count 14.

## C.D.S.

With respect to the charges in which C.D.S. is alleged to be the victim, the State's evidence tended to show that on 25 May 2006 C.D.S. was working as a prostitute on the corner of George Street. Defendant stopped his vehicle there and told C.D.S. to get in. C.D.S. got into defendant's vehicle and defendant drove her into some woods. Defendant gave C.D.S. money which she placed in her bra and she began to perform a sex act. When the sexual act was finished, defendant began punching C.D.S. He ordered her to take her clothes off, which she did. She feared she would die. He went through her clothes and then told her to run. She fled and defendant left in his vehicle.

[29] Defendant contends the trial court erred in denying his motion to dismiss the charge of common law robbery against C.D.S. because he argues there was insufficient evidence that he took C.D.S.'s property. His argument has no merit. The State's evidence shows that after beating C.D.S. and ordering her to remove her clothes, he went through her clothing and told her to give him the money he had given her earlier. He then told her to run or he would "get her." The evidence was sufficient to show that defendant placed C.D.S. in such fear as to cause her to flee leaving the property with him. This assignment of error is overruled.

## CONCLUSION

We have carefully examined defendant's remaining assignments of error and conclude that they have been abandoned pursuant to

**STATE v. WILLIAMS**

[201 N.C. App. 161 (2009)]

N.C.R. App. P. 28(b)(6) (2009) (amended Oct. 1, 2009). For the reasons stated above, we must vacate defendant's conviction of assaulting K.L.A. inflicting serious injury in 06 CSR 57321, count 14; defendant's conviction of assaulting L.T. by strangulation in 06 CSR 57321, count 19; and defendant's conviction of assaulting K.N.J.W. inflicting serious bodily injury in 06 CSR 57025, count 3. Defendant's conviction of assaulting M.L.W. inflicting serious bodily injury in 06 CSR 57321, count 9 is reversed. Cases 06 CSR 57321, counts 17, 18 and 20 are remanded for resentencing. As to all of the remaining counts, we find no error.

| 07 CRS 7397 | 1 | No error. |
| 06 CRS 57320 | 2 | No error. |
| 06 CRS 57025 | 3 | Vacated. |
| 06 CRS 57025 | 4 | No error. |
| 06 CRS 57320 | 5 | No error. |
| 06 CRS 57321 | 6-7 | No error. |
| 06 CRS 57321 | 8 | No error. |
| 06 CRS 57321 | 9 | Reversed. |
| 06 CRS 57321 | 10 | No error. |
| 06 CRS 57321 | 11 | No error. |
| 06 CRS 57321 | 13 | No error. |
| 06 CRS 57321 | 14 | Vacated |
| 06 CRS 57321 | 15 | No error. |
| 06 CRS 57321 | 16 | No error. |
| 06 CRS 57321 | 17 | Remanded for resentencing. |
| 06 CRS 57321 | 18 | Remanded for resentencing. |
| 06 CRS 57321 | 19 | Vacated. |
| 06 CRS 57321 | 20 | Remanded for resentencing. |

No error. Judges HUNTER and BRYANT concur.