STATE OF NORTH CAROLINA v. JOHN AUSTIN JAMES

No. COA06-348

(Filed 17 April 2007)

### 1. Discovery— pretrial order—statements

The trial court did not err in a prosecution for statutory rape and other sexual crimes by allegedly admitting evidence in violation of another trial judge's pretrial order for the State to turn over all discoverable material to defendant by 8 February 2005, because: (1) the prior trial judge's order applied to the victim's direct statement to the prosecutor regarding what she told her

**STATE v. JAMES**

[182 N.C. App. 698 (2007)]

friend, but did not apply to any statements that her friend gave directly to the prosecutor; (2) the State was not allowed to introduce the victim's direct statement to the prosecutor at trial as a sanction for violating the requirements of the order; (3) N.C.G.S. § 15A-903(a)(1) applies only to the files of law enforcement officers and prosecutors, but does not apply to evidence yet to be discovered by the State; and (4) statements by the other victim and the victim's aunt were made after 8 February 2005, and thus, fell beyond the scope of the order.

## 2. Indecent Liberties— multiple counts based on single episode—double jeopardy inapplicable

The trial court did not violate defendant's double jeopardy rights by entering judgment for three counts of indecent liberties based on a single episode in spring 1994 that a minor victim described in her testimony, because: (1) a defendant may be found guilty of multiple crimes arising from the same conduct so long as each crime requires proof of an additional or separate fact; (2) multiple sexual acts, even in a single encounter, may form the basis for multiple indictments of indecent liberties; and (3) in the instant case, there was both touching and two distinct sexual acts in a single encounter.

## 3. Criminal Law— denial of jury request to review testimony—trial court's exercise of discretionary power

The trial court in a prosecution for statutory rape and other sexual crimes did not act under a misapprehension of law by disavowing its authority to grant the jury's request to review important testimony where the record shows that the trial court recognized the authority to order the jury to reexamine testimony read back or transcribed, but in its discretion denied the jury's request. N.C.G.S. § 15A-1233.

Appeal by defendant from judgments entered 22 April 2005 by Judge J. Gentry Caudill in Mecklenburg County Superior Court. Heard in the Court of Appeals 13 November 2006.

*Attorney General Roy Cooper, by Assistant Attorney General R. Kirk Randleman, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Katherine Jane Allen, for defendant-appellant.*

CALABRIA, Judge.

John Austin James ("the defendant") appeals from judgments entered upon jury verdicts finding him guilty of statutory rape, statutory sexual offense, second-degree rape, second-degree sexual offense, attempted second-degree rape, felonious incest, indecent liberties, and crime against nature. We find no error.

The defendant and his wife were married and had six children. Five of the children were born during the marriage and the sixth child, K.K. ("K.K."), was his wife's child from a previous relationship. On 3 February 2004, K.K., then 23-years old, told her maternal aunt, Doris Bradshaw ("Bradshaw") that the defendant had sexually abused her over a period of six years, from the time she was fourteen years old. She also told Bradshaw she was concerned that her half-sister, N.F. ("N.F."), might be suffering from the same type of abuse. When K.K. communicated her concerns to N.F., N.F. confirmed she too was suffering abuse. Bradshaw took K.K. to the police department, where K.K. described the abuse to authorities. Police initiated an investigation into the allegations and subsequently arrested the defendant for numerous acts of sexual abuse against K.K. and N.F.

As a State's witness during defendant's trial in Mecklenburg Superior Court, K.K. testified that the defendant sexually abused her from 1994 until 2000, when she left the defendant's home. K.K. stated the abuse included sexual intercourse, oral sex, and inappropriate touching. Specifically, the defendant required submission to sexual activity in order to receive privileges.

> [I]f my cousin wanted me to go [to] the movies with her I would have to ask my step-dad, and in order for me to be able to do things like that I would have to do what he wanted to do, sexual intercourse or something—perform oral sex on him or if he wanted to perform oral sex on me. I would have to do it in order to go somewhere like that.

K.K. testified that she was frequently abused in this manner, approximately "ten times a month," until she moved out of the home in 2000. She stated the defendant further coerced her to submit to his sexual demands by telling her there were Bible stories about daughters sleeping with their fathers and threatened he could cheat on K.K.'s mother with other women if she did not comply with his demands.

At trial, N.F. testified that the defendant, her father, sexually abused her for the last three years. She also described how defendant granted privileges conditioned on her assent to his sexual advances.

The jury returned verdicts finding the defendant guilty of one count of statutory rape, one count of statutory sexual offense, two counts of second-degree sexual offense, two counts of second-degree rape, one count of attempted second-degree rape, five counts of indecent liberties, one count of felonious incest, and one count of crime against nature. Superior Court Judge J. Gentry Caudill ("Judge Caudill") then sentenced defendant on all his convictions to a minimum term of 69 years and a maximum term of 81 years in the North Carolina Department of Correction. From those judgments, defendant appeals.

[1] Defendant initially argues that Judge Caudill erred in admitting evidence in violation of Judge Linwood D. Foust's ("Judge Foust") pre-trial order. Specifically, Judge Foust ordered the State to turn over all discoverable material to the defendant by 8 February 2005. Defendant contends that the trial judge erred by effectively overruling Judge Foust's order. We disagree.

*I. K.K.'s statement to the State*

Defendant correctly states that one Superior Court judge may not overrule another Superior Court judge in the same case unless the moving party demonstrates a substantial change in circumstances from the time of the original ruling. *State v. Woolridge*, 357 N.C. 544, 549-50, 592 S.E.2d 191, 194 (2003). However, in the case *sub judice*, Judge Caudill did not overrule Judge Foust.

Prior to Judge Foust's order, the prosecutor met with K.K. and obtained a statement from her describing a discussion with a friend. This statement to the prosecutor was the first time K.K. had told anyone involved in the investigation about her conversations with her friend. The identity of K.K.'s friend was unknown until after 8 February 2005 when the State learned K.K.'s friend's name was Regina Judge ("Ms. Judge").

On 6 April 2005, the prosecutor sent an e-mail to defense attorneys that Ms. Judge would be a witness for the State, that K.K. had talked with her about the offenses, and that her testimony would corroborate K.K.'s description of the offenses. After receiving the 6 April e-mail, defense attorneys filed a motion for sanctions. During the hearing to determine whether the State should be sanctioned, the

prosecutor gave the defendant a written summary of Ms. Judge's oral statement. According to the summary, the prosecutor informed the defendant that Ms. Judge would testify about these confidential conversations with K.K.

At the sanction hearing, Judge Caudill found that K.K.'s statement to the prosecutor was made prior to 8 February but Ms. Judge's statement to the prosecutor was made after 8 February 2005. Therefore, Judge Foust's order only applied to K.K.'s direct statement to the prosecutor regarding what she told Ms. Judge but did not apply to any statements that Ms. Judge gave directly to the prosecutor. Since the State violated the requirements of Judge Foust's order as to K.K.'s direct statement to the prosecutor, as a sanction for this violation, the State was not allowed to introduce K.K.'s direct statement to the prosecutor at trial. According to Judge Caudill's order, the State was sanctioned and therefore K.K. did not testify to statements she made to Ms. Judge about the alleged offenses.

*II. Ms. Judge's testimony*

When the defendant files a motion seeking discovery, the court must order the State to:

(1) Make available to the defendant the complete files of all law enforcement and prosecutorial agencies involved in the investigation of the crimes committed or the prosecution of the defendant. The term "file" includes the defendant's statements, the codefendants' statements, witness statements, investigating officers' notes, results of tests and examinations, or any other matter of evidence obtained during the investigation of the offenses alleged to have been committed by the defendant.

N.C. Gen. Stat. § 15A-903(a)(1) (2005). This statute applies only to the "files" of law enforcement officers and prosecutors, which includes all existing evidence known by the State but does not apply to evidence yet-to-be discovered by the State. Our statutes inherently contemplate this scenario by imposing upon the State a continuing duty to disclose any evidence or witnesses discovered prior to or during trial. N.C. Gen. Stat. § 15A-907 (2005).

In Judge Caudill's order, he reminded the State of the requirement under N.C. Gen. Stat. § 15A-903 to furnish the defense with witness statements including oral statements "in written form." After 8 February, the prosecutor notified the defendant of his intention to call a previously undisclosed witness, Ms. Judge, and provided her state-

**STATE v. JAMES**

[182 N.C. App. 698 (2007)]

ment in written form. Defendant objected to Ms. Judge being called as a witness, and moved to bar her testimony as a violation of Judge Foust's order. Judge Caudill heard defendant's motion and ordered that this sanction did not apply to Ms. Judge's statement to the prosecutor since that statement occurred after the 8 February 2005 discovery deadline, a period not covered by Judge Foust's order and more importantly, the prosecutors were unaware that Ms. Judge would testify until after the deadline.

### III. Statements by N.F. and Bradshaw

Finally, the defendant asked the trial court to enforce Judge Foust's order and to prohibit any testimony or evidence by N.F. or Bradshaw. Judge Caudill found that the statements the State was seeking to introduce were made by N.F. and Bradshaw to the State after 8 February 2005. Judge Caudill concluded these statements were made after 8 February 2005 and fell beyond the scope of Judge Foust's order, therefore, Judge Foust's order and sanctions did not apply. Accordingly, this argument that the trial judge overruled Judge Foust's order is without merit.

[2] Defendant next argues that the trial court erred in entering judgment for three counts of indecent liberties for a single episode in spring 1994 that K.K. described in her testimony. The jury convicted defendant of separate counts of indecent liberties for touching and sucking K.K.'s breasts, performing oral sex on her, and committing sexual intercourse with her. Defendant contends that because these convictions arose from the same assault, his constitutional right protecting him from double jeopardy was violated. We disagree.

North Carolina General Statute § 14-202.1(a)(1) (2005) states:

(a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:

(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or

(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

*Id.* "Both the fifth amendment to the United States Constitution and article I, section 19 of the North Carolina Constitution prohibit multi-

ple punishments for the *same* offense absent clear legislative intent to the contrary." *State v. Etheridge*, 319 N.C. 34, 50, 352 S.E.2d 673, 683 (1987).

"Our courts consider the 'gravamen' or 'gist' of the statute to determine whether it criminalizes a single wrong or multiple discrete and separate wrongs." *State v. Petty*, 132 N.C. App. 453, 461, 512 S.E.2d 428, 434 (1999). Our courts have previously addressed the gravamen of North Carolina's indecent liberties statute.

> The evil the legislature sought to prevent in this context was the defendant's performance of any immoral, improper, or indecent act in the presence of a child "for the purpose of arousing or gratifying sexual desire." Defendant's purpose for committing such act is the gravamen of this offense; the particular act performed is immaterial.

*State v. Hartness*, 326 N.C. 561, 567, 391 S.E.2d 177, 180 (1990). Here, defendant's convictions for three counts of indecent liberties occurred during the same transaction. He was found guilty of violating the statute by fondling K.K.'s breasts, by performing oral sex on her, and by forcing sexual intercourse upon her.

Our courts have previously held that a defendant may be found guilty of multiple crimes arising from the same conduct so long as each crime requires proof of an additional or separate fact. *Etheridge* at 50, 352 S.E.2d at 683. Our Supreme Court recently upheld a conviction involving three counts of indecent liberties with respect to the same victim arising from three separate and distinct encounters. *State v. Lawrence*, 360 N.C. 368, 627 S.E.2d 609 (2006). In the case *sub judice*, the defendant committed a single, continuous sexual assault against a single victim.

We recently considered a fact pattern similar to the case *sub judice* in *State v. Laney*, 178 N.C. App. 337, 631 S.E.2d 522 (2006). In *Laney*, the defendant was charged with two counts of indecent liberties after defendant entered the victim's bedroom, pulled the covers down and touched the victim's breast over her shirt, then put his hand under the waistband of her pants, and finally touched the victim over her pants. The Court reasoned the acts charged both involved touching and were part of one transaction, and thus constituted one count of indecent liberties, not two. The Court distinguished *Lawrence* by noting that in *Lawrence*, the three acts were "three separate and distinct" encounters, and not part of a single transaction.

We note, however, that the *Laney* Court emphasized the sole act alleged was touching, and "not two distinct sexual acts." *Id.* at 340, 627 S.E.2d at 524. This language indicates that multiple sexual acts, even in a single encounter, may form the basis for multiple indictments for indecent liberties. Here, there was both touching and two distinct sexual acts in a single encounter. The indictments each spelled out a separate and distinct fact needed to be proven by the State in order to gain a conviction, and the three acts were distinct acts each constituting the crime of indecent liberties. The distinctive character of the acts is not altered because all three occurred within a short time span. As such, we determine this case is distinguishable from *Laney* and conclude that defendant was properly found guilty of three counts of indecent liberties with a minor.

**[3]** Defendant lastly argues that the trial court acted under a misapprehension of law by disavowing its authority to grant the jury's request to review important testimony. We determine that this argument is unsupported by the record.

A judge's decision to allow jurors to reexamine evidence admitted at trial is governed by N.C. Gen. Stat. § 15A-1233(2005), which states in relevant part:

(a) If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

(b) Upon request by the jury and with consent of all parties, the judge may in his discretion permit the jury to take to the jury room exhibits and writings which have been received in evidence. If the judge permits the jury to take to the jury room requested exhibits and writings, he may have the jury take additional material or first review other evidence relating to the same issue so as not to give undue prominence to the exhibits or writings taken to the jury room. If the judge permits an exhibit to be taken to the jury room, he must, upon request, instruct the jury not to conduct any experiments with the exhibit.

Here, the trial court refused the jury's request to review the testimony of social worker Christopher Ragsdale and Officer Walton, stating:

> . . . I would instruct you, or tell you, that although the Court Reporter does make a record of the testimony in the trial, it is not done or not produced as the testimony is being given—and the term is that it is being done in real time—but rather is later prepared by the Court Reporter. The Court Reporter takes the record that he has made and reduces it to a typed report, which takes some time. So I am not going to stop your deliberations and send him to type this transcript and come back at some later time to present that to you.
>
> So, in my discretion, I am not going to supply you with transcripts of the testimony but would instruct you to use your recollection as to the testimony of those other two witnesses, and the other witnesses in the trial.

Defendant contends that this exchange shows the trial court did not understand that it had the authority to allow the jury to reexamine testimony, and that this misunderstanding prejudiced him. In support, defendant cites *State v. Barrow*, 350 N.C. 640, 517 S.E.2d 374 (1999), and other cases in which the trial court failed to realize that it had discretion to grant or deny a jury's request to reexamine evidence. In *Barrow*, the trial court denied a jury's request to reexamine testimony, stating that the court was without the "ability" to present the jurors with a transcription of the requested testimony. The Supreme Court recognized that the trial court was unable to exercise its discretion because it failed to understand that it had such discretion. *Id.*

However, the facts of this case are more analogous to *State v. Burgin*, 313 N.C. 404, 329 S.E.2d 653 (1985), where a trial court recognized the authority to order the jury to reexamine testimony read back or transcribed, but in its discretion denied the jury's request. Here, the trial court noted that it would be time consuming for the testimony to be transcribed, but never indicated it lacked authority to order the court reporter to transcribe the requested testimony. The trial court further noted that it was denying the request at its *discretion,* which implies that the court understood that it could have granted the request at its discretion but chose not to do so. This is the distinguishing fact between the *Barrow* line of cases and the *Burgin* line of cases, and places this case squarely with the latter. As such, this assignment of error is overruled.

MORRISON v. PUBLIC SERV. CO. OF N.C., INC.

[182 N.C. App. 707 (2007)]

No error.

Chief Judge MARTIN and Judge TYSON concur.