IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-822

Filed 05 September 2023

Wake County, Nos. 19 CRS 212773, 19 CRS 217371

STATE OF NORTH CAROLINA

v.

PEDRO ISAIAS CALDERON, Defendant.

Appeal by defendant from judgments entered 8 September 2021 by Judge
Keith O. Gregory in Wake County Superior Court. Heard in the Court of Appeals 26
April 2023.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Sarah Grace
> Zambon, for the State.*
>
> *Leslie Rawls for Defendant-Appellant.*

CARPENTER, Judge.

Pedro Isaias Calderon ("Defendant") appeals from judgments entered after a
jury convicted him of three counts of indecent liberties with a child. On appeal,
Defendant argues the trial court erred by: (1) denying his motions to dismiss for
insufficient evidence; (2) instructing the jury on three charges of indecent liberties
with a child, which were based on three acts of kissing a minor child ("Jocelyn")[1] on

---

[1] Pseudonyms are used for all relevant persons throughout this opinion to protect the
identity of the minor child.

the same date; and (3) failing to arrest judgment on two of the three charges for indecent liberties. As to all three issues, Defendant contends the evidence of Defendant kissing Jocelyn supports only a single, continuous act rather than three separate and distinct acts. Consequently, Defendant argues the three indecent-liberties-with-a-child convictions violate his right to be free from double jeopardy. To the extent Defendant argues the evidence does not support three convictions of indecent liberties, we agree. We conclude the evidence relating to acts of kissing supports only two counts of indecent liberties. Accordingly, we remand to the trial court with instructions to arrest judgment on one of the indecent-liberties convictions and for resentencing.

## I.    **Factual & Procedural Background**

The events giving rise to the charges in this case occurred on 5 July 2019. The evidence presented at trial tended to show the following: Between June and July 2019, Jocelyn was thirteen years old and lived with her mother, grandmother, and three younger siblings in a townhome located in Raleigh, North Carolina. Jocelyn's grandmother took care of Jocelyn and her siblings, while Jocelyn's mother worked to support the family. During June and July, Jocelyn attended church services and youth church events, which were held about once per month at "Mary's" home.

"Marvin" and Defendant both rented a room in Mary's home. Marvin sometimes worked with Defendant, and the two became friends. Marvin was an "old friend" of Jocelyn's grandmother and family and was like "an older brother" to

Jocelyn. Marvin would take Jocelyn and her sister to the store to "buy stuff for the house."

In June 2019, Jocelyn first met Defendant after a church service in Mary's home. Defendant approached Jocelyn while she was eating, sat next to her, and asked her if she "liked [Marvin]." Defendant also asked Jocelyn "if [she] was 18 [years old]," to which she responded, "no." Outside Jocelyn's presence, Defendant told Marvin that Jocelyn "had a big ass," and Marvin told Defendant "not to joke around that way because [Jocelyn] was young." Nothing else happened that day between Defendant and Jocelyn.

Jocelyn next saw Defendant about four days later at a church-run youth pool party at Mary's house, following a Sunday church service. Defendant had a conversation with Jocelyn and "asked for [her] Instagram." He also asked for her Facebook profile, and they "be[came] friends" on the social media platform. Defendant and Jocelyn messaged daily through Facebook Messenger for "a week or two." Through these messages, Defendant asked Jocelyn if they could go to the movies together, sent her photos, and told Jocelyn he wanted to touch her.

On the morning of 5 July 2019, Jocelyn saw Defendant in person for a third time when he came to her home. Prior to Defendant's arrival, Jocelyn's grandmother had left their home in a taxi, taking Jocelyn's oldest sibling to a dental appointment, and leaving Jocelyn and her younger siblings asleep in the home. Jocelyn, and her neighbors who witnessed Defendant in the parking lot of Jocelyn's home, testified for

the State and recalled the events that transpired on 5 July 2019. Defendant also took the stand and testified on his own behalf. Jocelyn's version of events differed from those of Defendant and the neighbors.

Jocelyn testified that on the morning of 5 July 2019, she went outside to take out the trash and saw an old, dark-blue van parked in front of her home. Jocelyn saw someone in the van and recognized that person as Defendant. According to Jocelyn, she started to walk back to her home, and Defendant got out of the van, "grabb[ing]" her. She told Defendant that her "grandmother was going to come back any second . . . ." Defendant "started kissing [her] neck," which left bruising, or "hickeys," on her neck.

Defendant pulled Jocelyn in the driver's seat, lifted her shirt, and licked her breasts. Jocelyn tried to push Defendant off her, but he would not let her go. Defendant "got on top" of Jocelyn to close the passenger door. He then pulled down her pants, licked her vagina, and "put his two fingers in." Defendant moved to the passenger seat where he asked Jocelyn if she "wanted to get on top of him" or perform oral sex on him; Jocelyn responded "no" to both questions. Defendant kissed her again on the neck while inside the van. A taxi pulled up beside Defendant's van, carrying Jocelyn's grandmother and sister. Jocelyn got out of the van and went to the home of her next-door neighbors, "Natalie" and "Danielle," who were standing outside. Jocelyn admitted she had never spoken to these neighbors before this date, and she did not tell them what happened in the van.

Natalie witnessed Jocelyn and Defendant together on 5 July 2019 and testified to the following: Natalie was standing on her porch, about ten steps away from a blue van, when she noticed Jocelyn was inside the vehicle with an older man. Jocelyn and the man were "laying in the car, kind of cuddled up," laughing, and "holding a conversation." She witnessed Jocelyn and Defendant kiss twice; "six to seven minutes" passed between the two kisses. Natalie did not observe: (1) any sexual act take place, (2) Defendant touching Jocelyn's chest, (3) Jocelyn sitting on Defendant's lap, or (4) Jocelyn attempt to push or kick Defendant. Defendant and Jocelyn remained in the vehicle for a total of forty-five minutes, until a taxi pulled up carrying members of Jocelyn's family. Jocelyn quickly crawled over Defendant's lap and stepped outside the van from the front passenger door. Jocelyn approached Natalie, Danielle, and their young nephew, and began to speak with them, although Jocelyn had never interacted with them before. Defendant drove away.

Natalie's sister, Danielle, who was seventeen years old at the time, also witnessed Jocelyn with Defendant on 5 July 2019. Danielle testified she had not spoken to Jocelyn before the 5 July incident but was aware of Jocelyn's approximate age because Danielle observed Jocelyn "getting off the middle school bus" with Danielle's younger brother. Danielle witnessed Defendant kiss Jocelyn "at least once or twice." She believed Jocelyn was in the van for ten or fifteen minutes.

Lastly, Defendant recollected the events of 5 July 2019. Defendant testified Jocelyn sent him a message stating, "[c]ome save your girlfriend," before he left for

her townhome on the morning of 5 July 2019. Defendant went to the address Jocelyn gave him, and he texted her when he arrived. Jocelyn responded, "I'll be right out." Defendant waited outside of the van for about a minute before Jocelyn came out of the home, "came right straight to [Defendant], threw her arms around [Defendant], and . . . starting kissing [him]." Jocelyn asked Defendant to "[k]iss [her] on the neck" while they were in the parking lot outside the van, and he did so. Defendant admitted to kissing Jocelyn on the lips as well as on the neck, and that the bruising on Jocelyn's neck was "probably from [him] kissing her . . . ."

Defendant could see a man looking out the window of Jocelyn's home, and Jocelyn stated it was her uncle, whom she did not want Defendant to meet at that time. Defendant and Jocelyn entered the van through the driver's side door at Jocelyn's request because she did not want her grandmother to see her outside, and they kissed again once inside. Defendant took a photo of himself with Jocelyn as they sat in the front seat of the van. Defendant and Jocelyn's meeting came to an end when Jocelyn's grandmother arrived home. Defendant asked if could meet Jocelyn's grandmother, to which Joycelyn responded, "[n]ot yet." Jocelyn got out of the van and went towards her neighbors who were standing outside.

Defendant further testified he did not: (1) try to pull off Jocelyn's pants; (2) perform oral sex on Jocelyn; (3) digitally penetrate Jocelyn's vagina; (4) lick or touch Jocelyn's breasts; or (5) try to have sexual contact with Jocelyn. Defendant believed Jocelyn was twenty years old because "she looked like she was 20 and she told [him

that]." He also believed Jocelyn had children because he saw Jocelyn taking care of children at a prior church service. Defendant admitted asking Marvin at the church service where Defendant first met Jocelyn, if Jocelyn was married or had children; Marvin explained the children were Jocelyn's siblings, and Marvin told Defendant not to get involved with Jocelyn.

On 5 July 2019, Jocelyn's grandmother, Jocelyn's mother, and Marvin discovered Defendant's relationship with Jocelyn. Marvin and Jocelyn's grandmother arrived at Mary's home to confront Defendant. Defendant "took off running" and drove away; he did not return to Mary's home. Defendant was reported to the police.

On 29 August 2019, a Wake County grand jury indicted Defendant on three counts of indecent liberties with a child, in violation of N.C. Gen. Stat. § 14-202.1(a)(2), and one count of second-degree kidnapping, in violation of N.C. Gen. Stat. § 14-39. On 21 October 2019, a Wake County grand jury indicted Defendant on two additional counts of indecent liberties with a child, in violation of N.C. Gen. Stat. § 14-202.1(a)(2). Both indictments alleged that the offenses charged were committed on 5 July 2019.

On 17 September 2019, two arrest warrants were issued against Defendant. The first warrant was based on two counts of statutory sex offense with a child, and the second warrant was based on two counts of indecent liberties with a child. On 30 September 2020, Defendant was arraigned in open court and pled not guilty to all

counts.

On 30 August 2021, a jury trial began before the Honorable Keith O. Gregory in Wake County Superior Court. The trial court instructed the jury on five counts of indecent liberties with a child, one count of second-degree kidnapping, and two counts of statutory sex offenses.

The jury found Defendant guilty of three counts of indecent liberties with a child. The jury's verdicts specified they found: (1) "that [D]efendant kissed the alleged victim on the neck, outside of the van," (2) "that [D]efendant kissed the alleged victim on the mouth, inside of the van," and (3) "that [D]efendant kissed the alleged victim on the mouth for a second time, inside of the van." The jury found Defendant not guilty of: (1) one count of second-degree kidnapping, (2) two counts of statutory sex offense, and (3) two counts of indecent liberties with a child based on the actions of "pull[ing] up the alleged victim's bra and lick[ing] and kiss[ing] her breast" and "ask[ing] the alleged victim to perform oral sex[.]"

The trial court sentenced Defendant to three consecutive active sentences of imprisonment for a minimum of sixteen months and a maximum of twenty-nine months each (counts one and two in file number 19 CRS 212773 and count three in file number 19 CRS 217371). Defendant gave notice of appeal in open court following the entry of judgment.

## II. Jurisdiction

This Court has jurisdiction to address Defendant's appeal pursuant to N.C.

Gen. Stat. § 7A-27(b)(1) (2021) and N.C. Gen. Stat. § 15A-1444(a) (2021).

### III.    Issues

The issues before this Court are whether the trial court erred in: (1) denying Defendant's motions to dismiss on the basis the evidence established a single, continuous act that could not support three separate counts of indecent liberties; (2) instructing the jury on three indecent liberties charges—all based on the acts of kissing; and (3) failing to arrest judgment on any of the three counts of indecent liberties.

### IV.    Motion to Dismiss

We first consider Defendant's argument as to his motions to dismiss the charges.  As a preliminary matter, we consider Defendant's preservation of this issue. Here, at the close of the State's evidence, Defendant moved to dismiss based on insufficient evidence and alleged the charges violated his rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article I, Section 19 of the North Carolina Constitution.  Defendant renewed his motion to dismiss at the close of all evidence.  We conclude Defendant properly preserved his argument for appeal. *See* N.C. R. App. P. 10(a)(1).

### A. Standard of Review

"This Court reviews the trial court's denial of a motion to dismiss *de novo.*" *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "Upon defendant's motion for dismissal, the question for the Court is whether there

is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)).

"In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) (citation omitted).

**B. Analysis**

Defendant maintains the evidence to support the indecent-liberties charges establishes "a single, continuous act" because he kissed Jocelyn three times "in a very brief period," and his conduct only constituted a single type of act: kissing. The State counters that it "provided substantial evidence to support three counts of indecent liberties with a child that are at issue in this appeal." The State points to Jocelyn's testimony that Defendant kissed her neck and left bruising; Natalie's and Danielle's testimonies, which showed Defendant kissed Jocelyn once or twice in the van; and Defendant's brief on appeal in which he admits to kissing Jocelyn three times. For the reasons explained below, we agree with Defendant that the evidence does not support three separate and distinct acts for purposes of determining counts of indecent liberties.

North Carolina General Statute Section 14-202.1 provides:

> A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:
>
> (1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or
>
> (2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

N.C. Gen. Stat. § 14-202.1(a) (2021). "[T]he State must present substantial evidence of each of the following elements: (1) the defendant was at least 16 years of age, (2) he was five years older than his victim, (3) he willfully took or attempted to take an indecent liberty with the victim, (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred, and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire." *State v. Every*, 157 N.C. App. 200, 205, 578 S.E.2d 642, 647 (2003) (citation omitted); *see also* N.C. Gen. Stat. § 14-202.1(a).

Here, the uncontested evidence shows Defendant was forty years old, and Jocelyn was thirteen years old at all relevant times. Thus, Defendant was older than sixteen years of age and "at least five years older" than Jocelyn, and Jocelyn was "under the age of [sixteen] years." *See* N.C. Gen. Stat. § 14-202.1(a). Defendant does not dispute that he took indecent liberties with Jocelyn or that the action was "for the

purpose of arousing or gratifying sexual desire." *See Every*, 157 N.C. App. at 205, 578 S.E.2d at 647; *see also* N.C. Gen. Stat. § 14-202.1(a). Instead, Defendant only contests the number of indecent-liberties counts with which he was charged and convicted. With respect to the three indecent-liberties counts at issue on appeal, there was testimony from Jocelyn, two neighbors of Jocelyn, and Defendant, which tended to show that Defendant kissed: (1) Jocelyn's neck, leaving bruising; and (2) Jocelyn on the mouth twice, while inside the van.

### 1. *No Sexual Acts*

As a threshold issue, we must consider whether the kissing in this case was a "touching" or a "sexual act." Because Defendant's conduct falls outside the statutory definition of "sexual act," we conclude Defendant's acts underlying his convictions for indecent liberties constitute non-sexual acts.

In indecent-liberties cases in North Carolina, our Appellate Courts have utilized a different analytical approach when considering acts of touching as opposed to sexual acts. *State v. Williams*, 201 N.C. App. 161, 185, 689 S.E.2d 412, 425 (2009). We note a physical touching is not a required element of indecent liberties with a child under N.C. Gen. Stat. § 14-202.1. *State v. Nesbitt*, 133 N.C. App. 420, 423, 515 S.E.2d 503, 506 (1999). Furthermore, Section 14-202.1 neither defines nor requires a "sexual act," although the North Carolina General Statutes define "sexual act" under Chapter 14, Article 7B – Rape and other Sex Offenses. *See* N.C. Gen. Stat. § 14-27.20(4) (2021) (A "sexual act" means "[c]unnilingus, fellatio, analingus, or anal

intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body").

Hence, an act taken "for the purpose of arousing or gratifying sexual desire," *see* N.C. Gen. Stat. § 14-202.1(a)(1), is not necessarily a "sexual act," as defined by N.C. Gen. Stat. § 14-27.20(4). *See* N.C. Gen. Stat. § 14-27.20(4); *see also State v. James*, 182 N.C. App. 698, 705, 643 S.E.2d 34, 38 (2007) (acknowledging the defendant's act of fondling the victim's breast was a "touching," whereas the defendant's acts of oral sex and intercourse with the child were "sexual acts"). A sexual act may concurrently support charges for both a first-degree sexual offense and an indecent-liberties offense. *State v. Manley*, 95 N.C. App. 213, 217, 381 S.E.2d 900, 902 (holding "the definitional elements of first-degree sex offense [under Section 14-27.4(a)(1)] and indecent liberties are different," and therefore, concurrent convictions do not violate double jeopardy principles), *disc. rev. denied*, 325 N.C. 712, 388 S.E.2d 467 (1989).

The State relies on numerous cases involving sexual acts in arguing that there is "overwhelming evidence" in the instant case of three indecent liberties counts because "the kissing was not continuous and was broken up by talking[ and] hugging[.]" *See, e.g.*, *James*, 182 N.C. App. at 704–05, 643 S.E.2d at 38 (characterizing the defendant's conduct as sexual acts where the defendant performed oral sex on the victim and forced sexual intercourse upon her); *State v.*

*Midyette*, 87 N.C. App. 199, 202, 360 S.E.2d 507, 509 (1987) ("[T]he evidence showed [the] defendant penetrated the victim's vagina with his penis on three distinct occasions . . . ."); *State v. Small*, 31 N.C. App. 556, 558, 230 S.E.2d 425, 426 (1976) (holding the trial court did not err in denying the defendant's motion for nonsuit on a charge of rape); *State v. Coleman*, 200 N.C. App. 696, 706, 684 S.E.2d 513, 520 (2009) (concluding the defendant completed two separate acts: touching the victim's breasts and "watching and facilitating" the victim engage in sexual intercourse with a third person). After careful examination of the cases upon which the State relies, we find the State's argument unpersuasive in light of the issues before this Court involving a "touching" as opposed to a "sexual act." Although there may be overlap between indecent liberties cases involving touching and cases concerning sexual acts, we note the challenged convictions in the instant case exclusively involve touching. Therefore, our analysis falls in line with our jurisprudence regarding acts of touching in the context of an indecent-liberties offense. *See Williams*, 201 N.C. App. at 185, 689 S.E.2d at 425.

## 2.  *Separate & Distinct Acts*

Having concluded the three kisses were not sexual acts, we now must determine whether the three acts were separate and distinct occurrences, or one continuous occurrence, with respect to the charges for indecent liberties under N.C. Gen. Stat. § 14-202.1. In doing so, this Court must examine the facts underlying each charge. *State v. Rambert*, 341 N.C. 173, 176, 459 S.E.2d 510, 512 (1995). It is well

established that "a defendant may be found guilty of multiple crimes arising from the same conduct so long as each crime requires proof of an additional or separate fact." *James*, 182 N.C. App. at 704, 643 S.E.2d at 38 (citation omitted); *see also State v. Lawrence*, 360 N.C. 368, 374, 627 S.E.2d 609, 612–13 (2006) (affirming three indecent-liberties convictions where the jury heard testimony regarding at least three specific acts on three separate occasions, and the jury returned a guilty verdict for each count of indecent liberties). In interpreting criminal statutes, our Court "must . . . strictly construe[ the statutes] against the State." *State v. Smith*, 323 N.C. 439, 444, 373 S.E.2d 435, 438 (1988) (citations omitted).

Generally, "a single act [of taking indecent liberties] can support only one conviction." *State v. Jones*, 172 N.C. App. 308, 315, 616 S.E.2d 15, 20 (2005). Nonetheless, this Court has held "multiple *sexual acts* even in a single encounter, may form the basis for multiple [counts] of indecent liberties.*" James*, 182 N.C. App. at 705, 643 S.E.2d at 38 (emphasis added). Similarly, we have held rape is generally "not a continuous offense, but each act of intercourse constitutes a distinct and separate offense." *Small*, 31 N.C. App. at 559, 230 S.E.2d at 427. "A continuing offense . . . is a breach of the criminal law *not terminated by a single act or fact*, but which subsists for a definite period and is intended to cover or apply to successive similar obligations or occurrences." *State v. Johnson*, 212 N.C. 566, 570, 230 S.E. 319, 322 (1937) (emphasis added).

In *State v. James*, the defendant touched the victim's breasts, performed oral

sex on the victim, and then had sexual intercourse with her. *James*, 182 N.C. App. at 704, 643 S.E.2d at 38. Even though we concluded the act of touching the victim occurred within the "same transaction" as the two sexual acts upon the victim, we upheld the defendant's three convictions of indecent liberties with a child, counting the touching act and the two sexual acts each as additional or separate facts for purposes of charging the defendant. *Id.* at 705, 643 S.E.2d at 38.

This Court has yet to annunciate specific factors the trial court should consider in determining whether multiple, non-sexual acts constitute separate and distinct acts for purposes of an indecent-liberties prosecution. Rather, we have focused on the temporal proximity of the acts and any intervening events. *See State v. Laney*, 178 N.C. App. 337, 341, 631 S.E.2d 522, 525 (2006). In *Laney*, the defendant touched the victim's breasts while she slept in her bed. *Id.* at 338, 631 S.E.2d at 523. After the victim pushed the defendant's hand away, the defendant touched the victim under the waistband of her pants. *Id.* at 338, 631 S.E.2d at 523. On appeal, this Court analyzed the trial court's denial of the defendant's motion to dismiss. *Id.* at 339–41, 631 S.E.2d at 523–25. We held that two acts of touching, where "there was *no gap in time* between two incidents of touching," constituted a single act that could only support one conviction. *Id.* at 341, 631 S.E.2d at 525 (emphasis added). In vacating one judgment for an indecent liberties conviction, we reasoned that "[t]he sole act [supporting the conviction] was touching—not two distinct *sexual acts*." *Id.* at 341, 631 S.E.2d at 525 (emphasis added).

Our Supreme Court considered the question of what constitutes a continuous transaction, as opposed to three separate and distinct acts, in the context of analyzing three counts of discharging a firearm, which we believe is relevant to our analysis in the case *sub judice*. *Rambert*, 341 N.C. at 176–77, 459 S.E.2d at 513. The Court examined the defendant's firing of three shots from a non-automatic weapon and explained: (1) the defendant "*employ[ed] his thought processes* each time he fired the weapon," (2) each firing of the gun was "*distinct in time*," and (3) each bullet hit the vehicle in a "*different place.*" *Id.* at 177, 459 S.E.2d at 513 (emphasis added). Based on these facts, the Court "conclude[d] that [the] defendant's conviction and sentencing on three counts of discharging a firearm into [an] occupied property did not violate double jeopardy principles." *Id.* at 177, 459 S.E.2d at 513.

Similarly, the Kansas Supreme Court has set out "four guiding factors" in determining whether convictions arise from the same conduct, which we believe consolidate the relevant factors set forth by the *Rambert* Court with the factors this Court has previously used in indecent liberties cases where no sexual act is at issue:

> (1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.

*State v. Sellers*, 292 Kan. 346, 357, 253 P.3d 20, 28 (2011) (citation omitted). We believe the "fresh impulse" factor closely aligns with the *Rambert* factor concerning a

- 17 -

defendant's employing his thought process and making a conscious decision to act. *See Rambert*, 341 N.C. at 177, 459 S.E.2d at 513. Likewise, the temporal and location factors mirror the *Rambert* factors applied to the discharging-of-a-firearm offense. Finally, our line of indecent liberties cases involving touching has previously considered gaps in time and the presence of intervening events, or lack thereof. *See Laney*, 178 N.C. App. at 341, 631 S.E.2d at 525 (concluding "there was no gap in time between two incidents of touching"); *see also State v. Ramos*, No. COA05-1109, 2006 N.C. App. LEXIS 671, *9 (N.C. Ct. App. 2006) (unpublished) (concluding "arrest of judgment was not warranted as the evidence shows an intervening event"—the child sleeping—"between the initial acts of kissing and the subsequent acts of kissing and touching of the child's breast"); *State v. Crosby*, No. COA16-172, 2016 N.C. App. LEXIS 1182, *10 (N.C. Ct. App. 2016) (unpublished) (distinguishing the facts from *Laney* on the grounds the State's evidence tended to show "at least three separate and distinct indecent liberties taken by [the] defendant, separated by gaps of time"). We therefore adopt these four factors annunciated in *Sellers* with respect to our analytical framework for indecent liberties offenses involving multiple, non-sexual acts.

In *Sellers*, the defendant touched the victim on the breast while lying next to her in her bed. *Sellers*, 292 Kan. at 358, 253 P.3d at 29. The defendant got up from the bed and left the room to check on a barking dog. *Id.* at 358, 253 P.3d at 29. About thirty to ninety seconds later, the defendant returned to the bed and touched the

victim's vagina with his fingers. *Id.* at 358, 253 P.3d at 29. The *Sellers* court reasoned that the defendant "had to make a second conscious decision to touch [the victim]"; thus, both counts of indecent liberties were supported by separate and distinct acts by the defendant. *Id.* at 360, 253 P.3d at 29–30.

Here, viewing the evidence in the light most favorable to the State, Defendant kissed Jocelyn on her neck, leaving bruising, when they were outside of the van. Shortly thereafter, Defendant and Jocelyn climbed into the van, where they remained for up to forty-five minutes. In the van, they talked, cuddled, and kissed twice on the mouth—the two kisses occurring within a timeframe of fifteen minutes or less. Based on this evidence, the acts of Defendant kissing Jocelyn on the neck and kissing Jocelyn on the mouth occurred in two separate locations. *See Sellers*, 292 Kan. at 357, 253 P.3d at 28. After Defendant got into the van, Defendant had an opportunity to consider his conduct—and leave the scene—yet chose to kiss Jocelyn again. Like the defendant in *Sellers*, Defendant made a conscious decision—after an intervening event, i.e., relocating inside the private area of the van—to take indecent liberties again. *See id.* at 357, 253 P.3d at 28. Thus, there is substantial evidence to support one count of indecent liberties based on kissing outside the van and one count of indecent liberties based on kissing inside the van. *See Fritsch*, 351 N.C. at 378, 526 S.E.2d at 455.

Nevertheless, because the two kisses that occurred inside the van took place in fifteen minutes or less and were not separated by any intervening act, we conclude

these actions by Defendant constituted a single, "continuing offense." *See Johnson*, 212 N.C. at 570, 230 S.E. at 322; *Sellers*, 292 Kan. at 357, 253 P.3d at 28. Accordingly, there was not substantial evidence of two counts of indecent liberties with a child occurring inside the van. *See Fritsch*, 351 N.C. at 378, 526 S.E.2d at 455. Therefore, we conclude the trial court erred by denying Defendant's motions to dismiss as to one charge. *See id.* at 378, 526 S.E.2d at 455. We remand to the trial court with instructions to arrest judgment upon one of Defendant's convictions for indecent liberties with a child under file number 19 CRS 212773 and for a new sentencing hearing. *See State v. Posner*, 277 N.C. App. 117, 123, 857 S.E.2d 870, 873 (2021) (remanding to the superior court for arrest of judgment and resentencing where the defendant's two larceny convictions were based on the same transaction); *see also State v. Fields*, 374 N.C. 629, 636, 843 S.E.2d 186, 191 (2020) (quoting *State v. Pakulski*, 326 N.C. 434, 439–40, 390 S.E.2d 129, 131–32 (1990) ("While we agree in certain cases an arrest of judgment does indeed have the effect of vacating the verdict, we find that in other situations an arrest of judgment serves only to withhold judgment on a valid verdict which remains intact.")).

## V.    Conclusion

We conclude the trial court erred by denying Defendant's motion to dismiss because there was not substantial evidence of three counts of indecent liberties with a child; rather, the evidence supported only two counts. We therefore remand the matter to the trial court with instructions to arrest judgment upon one of Defendant's

convictions for indecent liberties and conduct a new sentencing hearing.

NO ERROR IN PART; REMANDED FOR ARRESTING JUDGMENT AND RESENTENCING.

Judge HAMPSON concurs.

Judge STADING concurs in part and dissents in part by separate opinion.

No. COA22-691 – *State v. Calderon*

STADING, Judge, concurring in part and dissenting in part.

Being bound by the decisions of this Court in *State v. Laney*, 178 N.C. App. 337, 631 S.E.2d 522 (2006), *State v. James*, 182 N.C. App. 698, 643 S.E.2d 34 (2007), and *State v. Williams*, 201 N.C. App. 161, 689 S.E. 412 (2009), I accept as presently authoritative the majority's position that there is a different analytical path applied to "sexual acts" and "touching" in the context of charges of indecent liberties. This being so, I concur in the majority's conclusion that the adopted test is imperative to distinguish between multiple acts of touching. However, I would note that panels of this Court and future litigants could benefit from the guidance of our Supreme Court concerning whether the judicially-constructed distinction between "sexual acts" and "touching," not found in the statute, is appropriate. I respectfully dissent from the ultimate holding of the majority opinion and would find that there are three separate and distinct acts when applying the adopted test.

"Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In re Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (citations omitted). Therefore, we are required to remain on the trail first blazed in *State v. Laney*, in which a panel of our Court decided that a "defendant's acts of touching the victim's breasts and putting

his hand inside the waistband of her pants were part of one transaction" and "[t]he sole act involved was touching—not two distinct sexual acts." 178 N.C. App. at 341, 631 S.E.2d at 525. The Court also noted that "there was no gap in time between two incidents of touching, and the two acts combined were for the purpose of arousing or gratifying defendant's sexual desire." *Id.* While the Court's consideration of "no gap in time" between the two incidents merits weight, the emphasis on "touching" may have been improvident. *Id.*

A year later, in *State v. James*, this trajectory continued when a panel of our Court wrestled with "a fact pattern similar to" *State v. Laney*. *James*, 182 N.C. App. at 704, 643 S.E.2d at 38. Although, the facts of *State v. James* were different in that "[h]ere, there was both touching and two distinct sexual acts in a single encounter." *Id*. at 705, 643 S.E.2d at 38. The Court upheld the defendant's conviction of three counts of indecent liberties and distinguished the case in "that the *Laney* Court emphasized the sole act alleged was touching, and 'not two distinct sexual acts'" and "[t]his language indicates that multiple sexual acts, even in a single encounter, may form the basis for multiple indictments for indecent liberties." *Id*. (quoting *Laney*, 178 N.C. App. at 341, 631 S.E.2d at 524). While the panel of this Court in *State v. James* was required to reconcile *Laney* with their decision, it continued the legacy of delineation between "touching" and "sexual acts." *Id.*

Shortly thereafter, in *State v. Williams*, another panel of our Court was faced with deciding whether the result of *State v. Laney* permitted a defendant's "conviction

of, and punishment for, two counts of [a] first degree sexual offense . . . during a single incident" or "violate[d] his double jeopardy rights." *Williams*, 201 N.C. App. at 184, 689 S.E.2d at 425. There, this Court quoted the language of *State v. James* differentiating "mere touching" and "sexual acts." *Id.* at 185, 689 S.E.2d at 425 (quoting *James*, 178 N.C. App at 705, 643 S.E.2d at 38). Further continuing down the path of its quoted predecessor panels, the opinion ordained "that a different analytical path should be applied when dealing with 'sexual acts' as opposed to touching in the context of indecent liberties." *Id.*

Going forward under the existing paradigm presents a concerning requirement for the appellate courts to distinguish between "touching" and "sexual acts" when applying the indecent liberties statute. As the facts present in this case—a 40-year-old man kissing a 13-year-old-child in this context—is the exact type of perverse, criminal behavior anticipated by the statute. As recognized by the panel in *State v. James*:

> The evil the legislature sought to prevent in this context was the defendant's performance of any immoral, improper, or indecent act in the presence of a child "for the purpose of arousing or gratifying sexual desire." Defendant's purpose for committing such act is the gravamen of this offense; the particular act performed is immaterial.

182 N.C. App. at 704, 643 S.E.2d at 38 (quoting *State v. Hartness*, 326 N.C. 561, 567, 391 S.E.2d 177, 180 (1990)). Here, after determining that the acts are covered by the statute, the only remaining question should be whether the acts are distinct for

3

purposes of double jeopardy. However, existing jurisprudence from the Court of Appeals forces current and future panels to draw lines between the types of acts to reach a result. And, absent the analysis required by our Court's precedent, such distinction between "touching" and "sexual acts" is not necessary—if acts occur within a single encounter, then such acts form the basis for a separate conviction if: (1) "the indictments each spell[ ] out a separate and distinct fact . . . to be proven by the State[,]" or (2) the same act ends and begins as determined by the test adopted in this opinion. *James*, 182 N.C. App. at 705, 643 S.E.2d at 38. Therefore, to prevent confusion for future courts and litigants, clarification from above would be beneficial.

Nonetheless, at the present time, we must analyze the case *sub judice* in accordance with existing precedent. To reach its conclusion, the majority prudentially applies an analytical framework adopted from *State v. Sellers*, 292 Kan. 346, 357, 253 P.3d 20, 28 (2011). In doing so, the majority weighs the four guiding factors and reaches the conclusion that defendant committed two separate and distinct acts of indecent liberties with a minor. While I agree that the test adopted by the majority is appropriate for determining when the same act ends and begins, I would find that defendant committed three separate and distinct acts.

In the matter before us, in a light most favorable to the State, defendant kissed Jocelyn on her neck outside of the van once and then inside of the van "twice, and it was not back to back." *See State v. Irwin*, 304 N.C. 93, 98, 282 S.E.2d 439, 443 (1981) (citations omitted). There was a "break in between" the kisses in the van of "six to

seven minutes." In applying the guiding factors from *Sellers* to the particular facts presented by this case, I would conclude that the separation of six to seven minutes is distinct in time, permitting defendant to employ his thought process and make a conscious decision to engage in the same act a second time. *See State v. Sellers*, 292 Kan. at 357, 253 P.3d at 28; *State v. Rambert*, 341 N.C. 173, 176, 459 S.E.2d 510, 512 (1995). This conclusion squares with the demands of double jeopardy as well as the result of *State v. Laney,* in which "there was no gap in time between two incidents of touching. . . ." 178 N.C. App. at 341, 631 S.E.2d at 525. Accordingly, I would find that the trial court did not err by denying defendant's motion to dismiss, by instructing the jury on three charges of indecent liberties with a child, nor by declining to arrest judgment upon one of the three convictions for indecent liberties.