IN THE SUPREME COURT OF NORTH CAROLINA

No. 238A23

Filed 12 December 2025

STATE OF NORTH CAROLINA

v.

PEDRO ISAIAS CALDERON

Appeal pursuant to N.C.G.S. § 7A-30(2) (2023) from the decision of a divided panel of the Court of Appeals, 290 N.C. App. 344 (2023), reversing in part a judgment entered on 8 September 2021 by Judge Keith O. Gregory in Superior Court, Wake County, and remanding the case to arrest judgment and for resentencing. On 28 June 2024, the Supreme Court allowed both parties' petitions for discretionary review as to additional issues. Heard in the Supreme Court on 11 February 2025.

*Jeff Jackson, Attorney General, by Nicholas S. Brod, Solicitor General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by John F. Carella, Assistant Appellate Defender, for defendant-appellee.*

RIGGS, Justice.

On 8 September 2021, a jury convicted Pedro Isaias Calderon of three counts of taking indecent liberties with a child for kissing a thirteen-year-old girl, Jocelyn,[1] on the neck outside his van, on the mouth inside his van, and on the mouth for a

---

[1] Pseudonyms are used for the minor victim and other involved parties to protect their identities. *See* N.C. R. App. P. 42(b).

second time inside his van. Mr. Calderon was forty years old at the time of the alleged improper conduct. On appeal, the Court of Appeals held that the trial court erred by denying Mr. Calderon's motion to dismiss because the State presented sufficient evidence for two, but not three, counts of taking indecent liberties with a child. *State v. Calderon*, 290 N.C. App. 344, 356 (2023). The Court of Appeals remanded to the trial court to arrest judgment on one of Mr. Calderon's indecent liberties convictions and for resentencing. *Id.* at 357. The dissent would have held that there was sufficient evidence to convict Mr. Calderon of three separate counts of taking indecent liberties, so the trial court did not err by denying Mr. Calderon's motion to dismiss. *Id.* at 359 (Stading, J., concurring in part and dissenting in part).

The State entered a notice of appeal based on the dissent and both parties filed petitions for discretionary review as to additional issues. The State sought review of whether the Court of Appeals' threshold distinction between "touching" and "sexual acts" was correct or necessary. Mr. Calderon sought review alleging the trial court made three errors: denying Mr. Calderon's motion to dismiss two counts of indecent liberties, given that he allegedly committed a single continuing offense; instructing the jury on three counts of indecent liberties; and violating Mr. Calderon's double jeopardy rights by failing to arrest judgment on two of the three counts of indecent liberties. This Court granted both petitions.

We hold that (1) the Court of Appeals erred in applying a threshold distinction between touching and sexual acts, (2) the Court of Appeals erred by applying a four-

factor test for multiple indecent liberties offenses instead of the "distinct interruption" test established in *State v. Dew*, 379 N.C. 64 (2021), and (3) Mr. Calderon was properly convicted of three counts of indecent liberties, so the trial court did not err in denying his motion to dismiss.

## I.    Factual and Procedural Background

Mr. Calderon met Jocelyn in June 2019 after a church service at the home where he was renting a room. Marvin, Mr. Calderon's friend who also lived in the home, testified that Mr. Calderon noticed Jocelyn and told him she "had a big ass." Marvin told Mr. Calderon "not to joke around that way because she was young." Mr. Calderon asked Marvin if Jocelyn was married, and if the children she was taking care of during the church service were her children. Marvin told him that the children were her siblings, told him that she was not married, and warned him not to get involved with Jocelyn. Mr. Calderon spoke with Jocelyn briefly that day.

Just a few days later, Mr. Calderon spoke with Jocelyn again at a pool party for the children who attended the church, where he asked for her social media information. Jocelyn gave him her Facebook information, and the two became Facebook friends. Mr. Calderon and Jocelyn messaged on Facebook "[p]robably every day" for one to two weeks. Mr. Calderon asked Jocelyn to go to the movies with him, sent her pictures, told her about his day, and told her that he wanted to touch her.

Then, on 5 July 2019, Mr. Calderon and Jocelyn met again in front of Jocelyn's home. Jocelyn's grandmother and younger sister took a taxi to a dentist appointment

that morning, leaving Jocelyn at home with her uncle and younger siblings. After that point, testimony from Jocelyn, two neighbors who witnessed the encounter, and Mr. Calderon diverged.

Jocelyn testified that, after cooking breakfast for her siblings, she took the trash outside and saw Mr. Calderon's van in the parking spot in front of her house. When she saw Mr. Calderon, she started to go back into her house, but Mr. Calderon grabbed her. Jocelyn alleged that, while standing outside the van, Mr. Calderon kissed her two or three times on the neck, leaving hickeys. He lifted her into the driver's seat of the van, lifted her shirt and bra, and kissed her breasts. Next, Mr. Calderon entered the van, climbing over Jocelyn to get into the passenger's seat. Jocelyn testified that he moved into the footwell under the driver's seat, pulled down her pants, and licked her vagina. Jocelyn testified that Mr. Calderon then digitally penetrated her for a minute or two, pulled her pants up, and moved back into the passenger's seat. Jocelyn also testified that he asked her to perform oral sex on him, which she refused, and that he kissed her on the neck inside the van.

At that point, a taxi with Jocelyn's grandmother and younger sister arrived back home, and Jocelyn left the van. She walked to her neighbors, who were standing outside, and briefly spoke with them but did not tell them what happened in the van. Jocelyn "hoped [her] grandmother didn't notice" because she was worried she would get in trouble.

Two of Jocelyn's neighbors also testified at trial. Natalie and Danielle, two

sisters, testified that they lived in a townhouse two doors down from Jocelyn's home. They had never spoken to Jocelyn before, but had seen her in their neighborhood and knew she was a child because she took the middle school bus with their younger brother. On 5 July 2019, Natalie and Danielle were sitting on their porch and playing with Danielle's son when they saw Jocelyn and Mr. Calderon in the van. Natalie and Danielle were approximately ten to twelve feet away from the van, which was facing the townhomes in the parking lot in front of Jocelyn's house.

Natalie and Danielle testified that Mr. Calderon and Jocelyn appeared to be "hugging on each other" as if they were "in a relationship" and "laying in the car, kind of cuddled up." The neighbors testified that they saw Mr. Calderon and Jocelyn kiss twice in the van. The kisses were "not back to back," with about six to seven minutes between the kisses. They observed the kisses, but saw "nothing sexual," saying Jocelyn and Mr. Calderon appeared to be laughing and holding a conversation.

The neighbors' stories varied on how long they observed the van, with Danielle testifying it was ten to fifteen minutes and Natalie testifying it was about forty-five minutes. When a taxi carrying her family arrived back at the house, Jocelyn left the van, approached the neighbors, and told Danielle that her son was cute. Danielle described Jocelyn as "playing it off" because they had never had a conversation before, but "she made it seem like to her parents that we were outside the whole time, like she was there . . . talking with us, but she wasn't." Mr. Calderon left the passenger's seat, got into the driver's seat, and left the parking lot.

Mr. Calderon also testified. He claimed that on 5 July 2019, Jocelyn gave him her address and sent him a Facebook message that said, "Come save your girlfriend." He drove to her house and texted her that he was outside. According to him, Jocelyn then said, "I'll be right out," and Mr. Calderon got out of his van to greet her. When Jocelyn came out of the house, Mr. Calderon testified that she came up to him, "threw her arms around" him, and started kissing him. They kissed "a couple times" and Jocelyn asked him to kiss her on the neck. Mr. Calderon admitted to kissing Jocelyn on the neck and leaving hickeys. Mr. Calderon claimed he asked to meet Jocelyn's uncle, who was watching them through a window, but Jocelyn declined because she did not want him to meet her family.

After kissing Jocelyn on the neck, Mr. Calderon testified that he got into the van first, and Jocelyn followed him. He testified that they spent ten to fifteen minutes "joking around, talking, laughing." Mr. Calderon denied engaging in any sexual acts with Jocelyn and claimed that they only "kissed and talked." When the taxi arrived with Jocelyn's grandmother, Mr. Calderon claims Jocelyn opened the door and left. When she was speaking with the neighbors, Mr. Calderon claimed Jocelyn motioned for him to leave, which he did.

On 29 August 2019, a grand jury indicted Mr. Calderon on three counts of taking indecent liberties with a child under N.C.G.S. § 14-202.1(a)(2) and one count of second-degree kidnapping under N.C.G.S. § 14-39. On 17 September 2019, two arrest warrants were issued against Mr. Calderon for two counts of statutory sex

offense with a child and two counts of indecent liberties with a child. On 21 October 2019, a grand jury indicted Mr. Calderon on two additional charges of taking indecent liberties with a child under N.C.G.S. § 14-202.1(a)(2). Mr. Calderon was ultimately charged with five counts of taking indecent liberties with a child, two counts of statutory sex offenses with a child under fifteen, and one count of second-degree kidnapping. Mr. Calderon pleaded not guilty to all counts. His trial began on 30 August 2021 in Wake County Superior Court.

On 7 September 2021, Mr. Calderon filed a motion to dismiss all charges on the grounds that the evidence was insufficient to support submission of the charges to the jury and because "there is a variance between the crime alleged in the indictment and any crime for which the State's evidence may have been sufficient to warrant submission to the jury." The trial court denied his motion.

The same day, at the charge conference, the State identified the facts supporting each of the five indecent liberties charges. Three of the charges related to Mr. Calderon kissing Jocelyn: (1) kissing her on the neck outside the van, (2) kissing her on the mouth inside the van, and (3) kissing her on the mouth inside the van for a second time. Mr. Calderon objected to these charges, arguing that, based on *State v. Laney*, 178 N.C. App. 337 (2006), the kisses were not sufficiently distinct acts to support two charges or convictions. The trial court overruled both objections and instructed the jury on all three counts based on the three kisses.

The jury found Mr. Calderon guilty of three counts of taking indecent liberties

with a child based on Mr. Calderon: (1) kissing Jocelyn on the neck outside the van, (2) kissing Jocelyn on the mouth inside the van, and (3) kissing Jocelyn on the mouth for a second time inside the van. The jury found Mr. Calderon not guilty of two counts of taking indecent liberties with a child based on Mr. Calderon allegedly (1) pulling up Jocelyn's bra and licking and kissing her breasts and (2) asking Jocelyn to perform oral sex on him. The jury also found Mr. Calderon not guilty of second-degree kidnapping and two counts of statutory sex offense. The trial court sentenced Mr. Calderon to sixteen to twenty-nine months of active imprisonment for each of the three indecent liberties convictions, to be served consecutively. Mr. Calderon gave notice of appeal in open court.

In a split decision, the Court of Appeals reversed the judgment in part and remanded with instructions to arrest judgment on one of Mr. Calderon's indecent liberties convictions and to conduct a new sentencing hearing. *Calderon*, 290 N.C. App. at 356–57. The majority first analyzed, as a threshold issue, whether the kisses were a "touching" or a "sexual act." *Id.* at 351–52. It concluded that the kisses were non-sexual acts. *Id.* at 352. Then, in deciding whether the kisses were separate and distinct acts or a single continuous occurrence, the Court of Appeals applied a test established in *State v. Sellers*, 253 P.3d 20 (Kan. 2011), a Kansas case. *Calderon*, 290 N.C. App. at 354–55. The majority held that the kisses outside the van were sufficiently distinct from the kisses inside the van and could be charged separately, *id.* at 356, but that the two kisses inside the van were not sufficiently distinct under

-8-

the *Sellers* test, so the trial court erred by denying Mr. Calderon's motion to dismiss as to one of the indecent liberties charges. *Id.*

The dissent agreed that, bound by prior decisions by the Court of Appeals, "there is a different analytical path" for sexual acts and touching. *Id.* at 357 (Stading, J., dissenting) (asking for clarification from this Court whether the distinction, "not found in the statute, is appropriate"). However, the dissent argued that Mr. Calderon had committed three separate and distinct acts under the *Sellers* test, so he was properly convicted of three separate counts of indecent liberties. *Id.* The dissent reasoned that, in the light most favorable to the State, the defendant kissed Jocelyn outside the van, then twice inside the van "not back to back." *Id.* at 359. The six-to-seven-minute break between the kisses in the van was sufficient to make the two kisses "distinct in time, permitting defendant to employ his thought process and make a conscious decision to engage in the same act a second time." *Id.* As such, the dissent would have found that the trial court did not err by denying Mr. Calderon's motion to dismiss, instructing the jury on three counts of indecent liberties, and declining to arrest judgment on one of the three indecent liberties convictions. *Id.*

The State moved for a temporary stay and petitioned this Court for a writ of supersedeas on 19 September 2023. We allowed the temporary stay on 20 September 2023 and the writ of supersedeas on 28 September 2023. The State filed its notice of appeal based on Judge Stading's dissent on 27 September 2023. The State also filed a petition for discretionary review as to additional issues on 10 October 2023, which

we allowed on 28 June 2024.  Mr. Calderon filed a petition for discretionary review under N.C.G.S. § 7A-31 on 10 October 2023, which we allowed on 28 June 2024.

## II.    Analysis

### A.  Standard of Review

This Court reviews *de novo* the denial of a motion to dismiss for insufficient evidence.  *State v. Tucker*, 380 N.C. 234, 236 (2022) (citing *State v. Crockett*, 368 N.C. 717, 720 (2016)).  In reviewing the denial, this Court "must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences."  *State v. Barnes*, 334 N.C. 67, 75 (1993) (citing *State v. Benson*, 331 N.C. 537, 544 (1992)).

This Court also reviews *de novo* a trial court's decisions about jury instructions, *State v. Osorio*, 196 N.C. App. 458, 466 (2009); *see State v. Copley*, 386 N.C. 111, 119 (2024) (examining *de novo* "whether a jury instruction correctly explains the law" (quoting *State v. Greenfield*, 275 N.C. 434, 449 (2020))), and likewise reviews *de novo* alleged double jeopardy violations, *State v. Courtney*, 372 N.C. 458, 462 (2019).

### B.  The Court of Appeals erred in distinguishing between touching and sexual acts as a threshold analysis under N.C.G.S. § 14-202.1(a).

The indecent liberties statute does not distinguish between touching and sexual acts, so the Court of Appeals erred by applying a threshold requirement distinguishing between touching and sexual acts.  The Court of Appeals said that "[a]s a threshold issue, we must consider whether the kissing in this case was a 'touching' or a 'sexual act.' . . . In indecent-liberties cases in North Carolina, our

Appellate Courts have utilized a different analytical approach when considering acts of touching as opposed to sexual acts." *Calderon*, 290 N.C. App. at 351–52 (citations omitted). The Court of Appeals erroneously treated this distinction as a threshold question it must resolve before determining whether multiple inappropriate contacts were separate and distinct. *Id.* at 351–53. Instead, the same test applies to both touchings and sexual acts, and a threshold determination is not necessary.

The Court of Appeals relied on prior indecent liberties cases that applied a "different analytical approach" for sexual acts and touching. *Id.* at 352 (citing *State v. Williams*, 201 N.C. App. 161, 185 (2009)). In *Laney*, the Court of Appeals reasoned that, when the defendant touched the victim's breasts, then put his hand under her waistband, the two contacts "were part of one transaction . . . . The sole act involved was touching—not two distinct sexual acts. Furthermore, there was no gap in time between two incidents of touching, and the two acts combined were for the purpose of arousing or gratifying defendant's sexual desire." *State v. Laney*, 178 N.C. App. 337, 341 (2006) (distinguishing *Laney* from *State v. Lawrence*, 360 N.C. 368 (2006), where the defendant committed indecent liberties "during three separate and distinct encounters"). The Court of Appeals in *Calderon* improperly focused on *Laney*'s distinction between touching and sexual acts, instead of its reliance on the continuous nature of the contact.

In *State v. James*, 182 N.C. App. 698 (2007), the Court of Appeals distinguished *Laney* because the defendant had committed both an improper touching and sexual

acts. *James*, 182 N.C. App. at 704–05. The Court of Appeals "note[d], however, that the *Laney* Court emphasized the sole act alleged was touching, and 'not two distinct sexual acts.' This language indicates that multiple sexual acts, even in a single encounter, may form the basis for multiple indictments for indecent liberties." *James*, 182 N.C. App. at 705. *James* reiterated *Laney*'s disparate treatment of touching and sexual acts for multiple indecent liberties charges.

In *James* and *Laney*, the Court of Appeals established that "different analytical path[s] should be applied when dealing with 'sexual acts' as opposed to touching in the context of charges of indecent liberties." *Williams*, 201 N.C. App. at 185 (citing *James*, 182 N.C. App. at 705). If the indecent liberties involved touching, multiple contacts would support only a single indictment, while if the indecent liberties involved sexual acts, multiple contacts could support multiple indictments. Therefore, the Court of Appeals analyzed as a threshold requirement whether a contact was a touching or a sexual act.

However, the indecent liberties statute does not support such a threshold requirement or different analytical paths. When interpreting statutes, "legislative intent is the guiding star." *Fearrington v. City of Greenville*, 386 N.C. 38, 52 (2024) (quoting *Piedmont Canteen Serv., Inc. v. Johnson*, 256 N.C. 155, 161 (1962)). This intent is first determined by the plain language, "as the 'actual words of the legislature are the clearest manifestation of its intent.' " *Id.* (quoting *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201 (2009)). North Carolina's indecent liberties

statute provides:

> A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:
>
> (1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or
>
> (2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

N.C.G.S. § 14-202.1(a) (2023). The text of the statute does not distinguish between touching and sexual acts; in fact, neither are mentioned. As such, courts should not impose an atextual threshold requirement distinguishing between touching and sexual acts before analyzing whether multiple indecent liberties charges are proper.

The lack of a threshold requirement is further supported by this Court's prior holdings that a defendant need not touch the victim to be convicted under the indecent liberties statute. *State v. Etheridge*, 319 N.C. 34, 49 (1987) ("We note first that it is not necessary that defendant touch his victim to commit an immoral, improper, or indecent liberty within the meaning of the statute."); *State v. Hartness*, 326 N.C. 561, 567 (1990) ("Nor is there any requirement that the State prove that a touching occurred."). Instead, "a variety of acts may be considered indecent" even if the perpetrator does not actually touch or commit a sexual act with the victim, as long as the liberty was taken "for the purpose of arousing or gratifying sexual desire."

*Etheridge*, 319 N.C. at 49–50; *see also Hartness*, 326 N.C. at 567. This is consistent with the purpose of the indecent liberties statute, where "[t]he evil the legislature sought to prevent . . . was the defendant's performance of any immoral, improper, or indecent act in the presence of a child 'for the purpose of arousing or gratifying sexual desire.' " *Hartness*, 326 N.C. at 567. As such, "Defendant's purpose for committing such an act is the gravamen of this offense; the particular act performed is immaterial." *Id.* Neither a touching nor "a showing of intent to commit an unnatural sexual act" is required to convict a defendant under N.C.G.S. § 14-202.1(a). *Id.*

Neither a touching nor a sexual act is listed in the text of the indecent liberties statute; neither is required to convict a defendant. As such, we reject the Court of Appeals' analysis requiring a threshold inquiry of whether an alleged indecent liberty is a "touching" or a "sexual act."

## C. The Court of Appeals erred by utilizing a multiplicity test under *Sellers* instead of applying *Dew*'s "distinct interruption" test.

The Court of Appeals below drew on a Kansas case, *State v. Sellers*, 253 P.3d 20 (Kan. 2011), to determine whether Mr. Calderon's three convictions for indecent liberties were proper. Believing *Sellers* to be consistent with this Court's ruling in *State v. Rambert*, 341 N.C. 173 (1995), the Court of Appeals established a four-factor test "for indecent liberties offenses involving multiple, non-sexual acts":

> (1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the

conduct.

*Calderon*, 290 N.C. App. at 354–55 (quoting *Sellers*, 253 P.3d at 28). However, the Court of Appeals did not need to apply a test specifically for "non-sexual acts," given that no distinction between touching and sexual acts is necessary. Moreover, when a defendant is charged with multiple counts of indecent liberties, our lower courts should instead apply this Court's "distinct interruptions" test articulated in *State v. Dew*, 379 N.C. 64 (2021).

In *Dew*, the defendant alleged the trial court erred in denying his motion to dismiss several assault charges because the State presented insufficient evidence of multiple assaults. *Id.* at 68. The defendant subjected his girlfriend to "a continuous, nonstop beating" for two hours in her family's trailer. *Id.* at 65. When it ended, the defendant's girlfriend removed the sheets from their bed, cleaned the mattress cover, and put their bags into the car. *Id.* at 66, 73–74. The defendant put his daughter into the car, made his girlfriend get into the car, and began to drive home. *Id.* at 74. At that point, he began beating his girlfriend again. *Id.* The defendant was charged with five counts of assault. *Id.* at 67. The jury found the defendant guilty of three counts of assault: two from his conduct inside the trailer and one from the beating in the car. *Id.* at 68, 74. The defendant appealed, alleging "there was insufficient evidence of multiple assaults such that the trial court erred by denying [his] motion to dismiss all but one assault charge . . . ." *Id.* at 68.

The Court held that, taking the evidence in the light most favorable to the State,

"there could be sufficient evidence of a distinct interruption between assault(s) in the trailer and the assault(s) in the car to submit the issue to the jury." *Id.* at 73. However, the Court also held that there was insufficient evidence to support two separate assault charges related to the beating in the trailer because "it was an ongoing, continuous attack." *Id.* at 74.

In analyzing whether the trial court properly denied the defendant's motion to dismiss, this Court articulated our "distinct interruption" test: "the State may charge a defendant with multiple counts of assault only when there is substantial evidence that a distinct interruption occurred between assaults." *Id.* at 72. The Court articulated a non-exhaustive list of examples that qualify as distinct interruptions, including "an intervening event, a lapse of time in which a reasonable person could calm down, an interruption in the momentum of the attack, a change in location, or some other clear break delineating the end of one assault and the beginning of another." *Id.* The Court also articulated factors which, without more, do not constitute distinct interruptions, including the victim suffering multiple injuries or the defendant using different methods of attack. *Id.* at 74.

Our lower state courts should use the *Dew* "distinct interruptions" test to determine whether a defendant has properly been charged with multiple counts of indecent liberties. However, as we did in *Dew*, we decline to extend *Rambert* to indecent liberties cases. In *Rambert*, the defendant was convicted of three counts of discharging a firearm into occupied property when he fired a gun three separate

times. *State v. Rambert*, 341 N.C. at 176–77. The Court held that his convictions did not violate double jeopardy because "[e]ach shot . . . required that defendant employ his thought processes each time he fired the weapon. Each act was distinct in time, and each bullet hit the vehicle in a different place." *Id.* From *Rambert*, it does not violate double jeopardy to charge a defendant with multiple counts of discharging a firearm into occupied property when the defendant fired a gun multiple times in a single incident. *Id.*

In *Dew*, the Court declined to extend *Rambert* to assault cases because the act of discharging a firearm differed from physical assaults. *Dew*, 379 N.C. at 72. We likewise decline to extend *Rambert* here because the commission of indecent liberties is more akin to assault than the discharging of a firearm. When discharging a firearm, "each distinctly fired shot is a separate discharge of a firearm" and can support separate charges. *Id.* However, for both assault and indecent liberties, each individual contact does not necessarily constitute a separate charge. In a fight, multiple punches could constitute a single assault charge or, if the State presents evidence of a distinct interruption, multiple punches could constitute multiple assault charges. *Id.* Similarly, in the context of indecent liberties, multiple inappropriate acts could constitute a single charge or multiple charges, depending on the facts of the case. Just as every punch in an assault is not necessarily a separate assault charge, so, too, do we recognize that each inappropriate act is not necessarily a separate indecent liberties charge. Therefore, the proper test to determine whether

a defendant has been properly charged with multiple counts of indecent liberties is the one we explained in *Dew*: whether a distinct interruption occurred, giving the perpetrator the opportunity to reconsider his or her conduct.

### D. Mr. Calderon was properly convicted of three counts of indecent liberties.

Applying *Dew*'s "distinct interruption" test, the trial court did not err in denying Mr. Calderon's motion to dismiss, and the Court of Appeals erred in remanding to the trial court with instructions to arrest judgment on one of his indecent liberties convictions. Viewing the evidence in the light most favorable to the State, and drawing all inferences in its favor, a distinct interruption occurred between each of the three kisses at issue.

In *Dew*, our Court was presented with facts where, at one point in the charged assault, the State did not present evidence of a distinct interruption during a "continuous, non-stop beating" in the same location for two hours. *Dew*, 379 N.C. at 65. However, we did find sufficient evidence for another, separate charge of assault because the process of cleaning and packing after the initial beating in the trailer was "an intervening event interrupting the momentum of the attack," and the beating in the trailer was "distinct in time and location" from the second beating in the car. *Id.* at 74. This distinct interruption was "a lapse of time in which a reasonable person could calm down," giving the defendant sufficient time to consider his actions and recognize the consequences. *Id.* at 72.

In *Laney*, the defendant touched the victim's breast, then touched under her

waistband. *Laney*, 178 N.C. App. at 338. The Court of Appeals held that the two touches "were part of one transaction" and that "there was no gap in time between [the] two incidents." *Id.* at 341. Accordingly, the Court of Appeals held that the trial court erred in denying the defendant's motion to dismiss because "a single act can support only one conviction." *Id.* (quoting *State v. Jones*, 172 N.C. App. 308, 315 (2005)).

Mr. Calderon was convicted of three counts of taking indecent liberties with a child for three kisses: (1) on Jocelyn's neck outside the van, (2) on the mouth inside the van, and (3) on the mouth inside the van six to seven minutes after the first kiss in the van. The Court of Appeals incorrectly concluded that the two kisses inside the van were a continuous act and thus should not have been charged separately. *Calderon*, 290 N.C. at 356. However, the six-to-seven-minute break between the kisses, in which Mr. Calderon was "joking around, talking, laughing" and cuddling with Jocelyn was a sufficiently distinct interruption to support separate charges. The two kisses in the van were more similar to *Dew*'s two separate assaults, first in the trailer and then in the car, than the "continuous, non-stop" initial assault in the trailer in *Dew* or the "one transaction" in *Laney*. The kisses were "not back to back." Instead, about six to seven minutes elapsed between each kiss, during which Mr. Calderon had the opportunity to reconsider and choose not to reoffend. Because this is a fact-specific inquiry, we decline to draw a brightline rule in deciding when an interruption creates enough time for a perpetrator to reconsider, thus creating a

distinct interruption. On these facts, six to seven minutes sufficed to create an adequate disruption to support two separate charges. The three kisses were sufficiently distinct to support three convictions.

As such, the trial court did not err in denying Mr. Calderon's motion to dismiss the charges. Because the three separate kisses could support three separate charges, Mr. Calderon's double jeopardy rights were not violated because he committed, and was properly convicted of, three distinct acts of taking indecent liberties with a child. The trial court did not violate Mr. Calderon's double jeopardy rights or err in instructing the jury on three counts of taking indecent liberties with a child.

## III.    Conclusion

The trial court properly found that Mr. Calderon committed three separate indecent liberties when he kissed Jocelyn three times, and there was no error in Mr. Calderon's conviction. Thus, we reverse the Court of Appeals' decision.

REVERSED.